Chad E. Nydegger (USB 9962)
cnydegger@wnlaw.com
Workman Nydegger
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

Jeffrey J. Mayer (*pro hac vice to be filed*)
Jeffrey.Mayer@akerman.com
Catherine A. Miller (*pro hac vice to be filed*)
Catherine.Miller@akerman.com
Timothy K. Sendek (*pro hac vice to be filed*)
Tim.Sendek@akerman.com
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, Illinois 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1934

*Attorneys for Plaintiff, DIRTT Environmental Solutions, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| DIRTT ENVIRONMENTAL SOLUTIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>LANCE HENDERSON, KRISTY HENDERSON, FALKBUILT, LLC, FALKBUILT LTD. and FALK MOUNTAIN STATES, LLC<br><br>Defendants. | **PLAINTIFF'S MOTION FOR A PRESERVATION ORDER AND, FOLLOWING EXPEDITED DISCOVERY, A LIMITED PRELIMINARY INJUNCTION TO PRESERVE THE STATUS QUO**<br><br>**Civil No.: 1:19-cv-00144**<br>**District Judge Dee Benson** |

# TABLE OF CONTENTS

**Page**

I.    PRECISE RELIEF SOUGHT AND GROUNDS FOR MOTION ........................................... 1

II.   RELEVANT FACTS .................................................................................................. 3

III.   SUPPORTING AUTHORITY ..................................................................................... 7

IV.   ARGUMENT ........................................................................................................... 9

   A.  DIRTT is Entitled to An Initial Preservation Order ........................................... 10

   (1)   Irreparable Harm in the Event an Order is Not Entered and Inadequacy of Other Remedies ......................................................................................................... 11

   (2)   There is No Increased Burden on the Parties to Comply With a Preservation Order  12

   B.  DIRTT is Entitled to Preliminary Injunction ..................................................... 12

   (1)   DIRTT is likely to prevail on the merits .................................................... 12

      (a)   *DIRTT's Confidential Business Information is protectable as a trade secret* ........ 13

      (b)   *Defendants Have Misappropriated DIRTT Confidential Business Information* ..... 14

   (2)   DIRTT Will Suffer Irreparable Harm Absent an Injunction ..................... 17

   (3)   The Balance of Hardships Favors Entry of the Requested Injunction ...... 18

   (4)   The Injunction Sought by DIRTT is Not Against the Public Interest ......... 18

   (5)   The Injunction Sought is Not Disfavored .................................................. 18

V.   CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apex Tool Group, LLC v. DMTCO, LLC et al.*,
   No. 3:1-cv-372, 2014 WL 6748344 (S.D.Ohio, Nov. 25, 2014) .............................................11

*Continental Oil Co. v. Frontier Refining Co.*,
   338 F.2d 780 (10th Cir. 1964) ......................................................................................8

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
   356 F.3d 1256 (10th Cir. 2004) ....................................................................................7

*Greater Yellowstone Coalition v. Flowers*,
   321 F.3d 1250 (10th Cir. 2003) ....................................................................................7

*Humble Oil & Refining Co. v. Harang*,
   262 F. Supp. 39 (E.D. La. 1966) .................................................................................8, 9

*ClearOne Communications, Inc. v. Chiang*, No. 2:07-CV-37 TC, 2007 WL
   3231524, at *3 (D. Utah Oct. 30, 2007), *modified*, No. 2:07-CV-37-TC, 2009
   WL 273325 (D. Utah Feb. 4, 2009) .................................................................7, 17, 18, 19

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,
   389 F.3d 973 (10th Cir. 2004) ......................................................................................7

*Lifetime Products, Inc. v. Correll, Inc.*,
   No. 02-CV-01366-TC (D. Utah Nov. 19, 2003)...........................................................8

*Madden v. Wyeth, Inc.*,
   No. 3-03-CV-0167-R, 2003 WL 21443404 (N.D. Tex. April 16, 2003)....................8

*Mountain Am. Credit Union v. Godfrey*,
   No. 2:06-CV-481 TS, 2006 WL 2129465 (D. Utah July 28, 2006) .........................13

*Neways Inc. v. Mower*,
   543 F. Supp. 2d 1277 (D. Utah 2008)......................................................................8, 17

*Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc.*,
   No. Civ. 3-95-784, 1995 WL 783610 (D. Minn. Oct. 20, 1995)...............................8

*Veteran Med. Prod., Inc. v. Bionix Dev. Corp.*,
   No. 1:05-CV-655, 2008 WL 696546 (W.D. Mich. Mar. 13, 2008)...........................11

## Statutes

12 P.S. § 5302 ......................................................................................................................13

18 U.S.C. § 1836 .................................................................................................................13

Federal Defend Trade Secrets Act ...............................................................................13, 16

Pennsylvania Uniform Trade Secret Act .........................................................................16

Pennsylvania Uniform Trade Secrets Act .........................................................................1

Utah. Code § 13-24-2 .....................................................................................................13, 16

Utah Uniform Trade Secrets Act, Federal Defend Trade Secrets Act ...........................1

**Other Authorities**

Fed. R. Civ. P. 65 .................................................................................................................1

Pursuant to Fed. R. Civ. P. 65 and Local Rules DUCivR 3-5, DUCivR 7-1, Plaintiff DIRTT Environmental Solutions, Inc. ("DIRTT") seeks a preservation order and limited preliminary injunction to preserve the status quo and to prevent the use of DIRTT confidential and proprietary information by Defendants in support of their competing business operations. In support of this Motion, DIRTT states:

## I.   PRECISE RELIEF SOUGHT AND GROUNDS FOR MOTION

This Motion requests the Court set an evidentiary hearing for Plaintiff to present its witnesses and forensic evidence in support of its request for a preliminary injunction based on DIRTT's claims for breach of Utah Uniform Trade Secrets Act, Federal Defend Trade Secrets Act and/or Pennsylvania Uniform Trade Secrets Act. Plaintiff has developed, and expects to further develop (in connection with the concurrently-filed motion for expedited discovery), substantial evidence, including electronic forensic evidence, that goes beyond what may be presented in this motion, to demonstrate Defendants' theft of DIRTT's trade secrets in support its motion for a preliminary injunction. Following that hearing, DIRTT will request a preliminary injunction to maintain the status quo and to prohibit Defendants from using DIRTT confidential and trade secret information during the pendency of this case.

DIRTT also is initially seeking a preservation order, considering the strong evidence currently in its possession that its confidential information is presently residing on various easily disposable flash drives, cloud services, and personal computers or drives in the possession, custody and control of Defendants. Further, in a separate motion, DIRTT is seeking expedited discovery prior to the hearing in order to allow the parties and the Court to properly tailor the preliminary injunction and to sensibly sort through the serious matters placed at issue by the Verified Complaint.

DIRTT's request for a preservation order, expedited discovery (sought in a separate motion filed concurrently herewith), and a status quo injunction is based upon evidence developed to date, and reliable indicators that DIRTT confidential and trade secret information beyond that currently identified by DIRTT has been converted and currently is in use by Defendants. DIRTT reasonably believes that Defendants are engaged in an unlawful effort to convert and use DIRTT's confidential and trade secret commercial information ("DIRTT Confidential Business Information"). DIRTT has already discovered disturbing information regarding Falkbuilt, LLC's and Falkbuilt Ltd.'s (collectively "Falkbuilt")[1] conduct: DIRTT has determined that Defendants, Falkbuilt, its employee and former DIRTT employee, Lance Henderson, and Kristy Henderson, an employee of a former DIRTT distribution partner and Lance's wife, all actively conspired to set up Falkbuilt to compete with DIRTT here in Utah and elsewhere, improperly taking and utilizing DIRTT Confidential Business Information in order to do so. Mr. Henderson and Amanda Buczynski, another former DIRTT employee, both lied to DIRTT when leaving the company about going to work for Falkbuilt and both misappropriated DIRTT Confidential Business Information. DIRTT also recently discovered that several former DIRTT employees who are now working for Falkbuilt all set up personal Dropbox accounts within weeks, or sometimes days, before leaving DIRTT's employ. DIRTT continues to analyze the departing employees' computer hard drives and instant messaging. If the Court grants the preservation order, the parties may then pursue additional evidence in discovery without fear of its destruction or deletion, culminating in the presentation of evidence at the preliminary injunction hearing following expedited discovery.

---

[1] Falkbuilt, LLC and Falkbuilt Ltd. both indicate that they are active in U.S. markets. *See e.g.*, www.falkbuilt.com (listing Falkbuilt Ltd. as having various U.S. locations). DIRTT expects that expedited discovery will reveal each entity's specific actions in the U.S. related to DIRTT's claims.

## II.     RELEVANT FACTS

As set forth in more detail in the Verified Complaint, and as DIRTT will present at the requested hearing, DIRTT is an innovative technology company that designs and builds prefabricated modular interiors for office buildings, educational institutions, and hospitals. The Verified Complaint sets out the relevant factual background, and it is not repeated in detail here. (Dkt. No. 2 at ¶¶ 2-6). The overview in this motion provides the framework for DIRTT's anticipated testimony. DIRTT possesses valuable and substantial DIRTT Confidential Business Information, including its proprietary ICE Software (which includes, among other things, a project's engineering and manufacturing data), pricing information, technical knowledge, strategic plans and business plans, and customer and prospect information. (*Id.* at ¶¶ 83-88).[2] Nor does the Verified Complaint set out the full range of DIRTT's misappropriated information. At the requested hearing, DIRTT will present a variety of witnesses, including DIRTT representatives with knowledge of DIRTT's Confidential Business Information, internal and external witnesses with knowledge of the electronic evidence and information supporting DIRTT's assertions, and third parties with knowledge of DIRTT's activities, as well Defendants and Defendants' representatives.

DIRTT's co-founder, Mogens Smed, had a difficult exit from DIRTT in September 2018. (Dkt. No. 2 at ¶ 26). Shortly after his departure, he was soliciting DIRTT employees in violation of his contractual obligations to DIRTT. (*Id.* at ¶ 19). Also shortly after his departure from DIRTT, Mr. Smed started Falkbuilt, a company that builds modular interiors for buildings and now competes with DIRTT. (*Id.*). As can be seen from Falkbuilt's website,[3] (advertising interior

---

[2] Evidence in support of this motion includes citations to DIRTT's Verified Complaint. Voluminous forensic evidence, which is too large to attach, and some of which is confidential, is referenced therein and in Dk. No. 2-15, the Declaration of Julian Grijns.
[3] www.falkbuilt.com

3

component construction for healthcare, commercial and office, and education) Falk competes in the same general market as DIRTT.[4] (*Id.*).

DIRTT has sued Mr. Smed and Falkbuilt Ltd. in a Canadian court for breach of Mr. Smed's contractual obligations to DIRTT. ([Dkt. No. 2](#) at ¶ 19). DIRTT is not seeking to enforce its non-solicitation agreements here, nor is it relevant whether every employee who left DIRTT's employ did so in violation of contractual obligations. Thus, this cause of action does not overlap with that case: it brings different claims, and seeks different remedies, under different law, against different defendants based on different acts. However, the movement of the significant number of former DIRTT employees to Falkbuilt is relevant because these employees had access to DIRTT Confidential Business Information, had an obligation to maintain such information in confidence, and, as the evidence demonstrates, removed such information from DIRTT for the benefit of the corporate Defendants or, in some cases, demonstrated access to such information and engaged in actions allowing the inference that the information was taken.

DIRTT has recently determined, based on a forensic study of electronic information, that former employees of DIRTT set up a new, competing business using DIRTT Confidential Business Information misappropriated by former DIRTT employees for their use at the new business started by Mr. Smed. (Dkt. No. 2 at ¶ 27). Defendants' conduct in the instances that have thus far come to light supports further discovery into Falkbuilt's use of DIRTT Confidential Business Information in the United States and a preliminary injunction preventing Defendants from using that information.

While the full extent of Defendants' misappropriation has yet to be determined, it is clear that it includes contact information for prospective and actual DIRTT customers, as well as DIRTT

---

[4] [www.dirtt.com](http://www.dirtt.com) (advertising projects in education, healthcare, office space, residential, government, and hospitality).

pricing and cost information, including budgets and estimates for projects for both prospective and existing DIRTT customers. DIRTT presently possesses both direct and indirect evidence that certain former DIRTT employees now working on behalf of Falkbuilt have taken DIRTT Confidential Business Information and are using it to compete against DIRTT. (Dkt. No. 2 at ¶¶ 46, 63, 71-74). What DIRTT expects to determine through the expedited discovery process is the extent of the information that has been taken, as well as the extent to which it is being put to use to assist Falkbuilt in competing with DIRTT. The requested preliminary injunction will prevent Defendants from using the DIRTT Confidential Business Information for a competitive advantage against DIRTT.

DIRTT's concerns are also grounded in the substantial and demonstrable dishonesty of Defendants and their employees, especially former DIRTT employees. Two of DIRTT's former employees, Mr. Henderson and Ms. Buczynski, both lied to DIRTT, each claiming that they were not leaving DIRTT's employ in order to work for or on behalf of Falkbuilt. (Dkt. No. 2 at ¶¶ 62, 70). Additionally, Mr. Henderson's theft of DIRTT Confidential Business Information is undisputed. He uploaded over 23,000 DIRTT files to his personal cloud account. Further, DIRTT has additional evidence that he plugged a hard drive into DIRTT's computer system and gathered DIRTT Confidential Business Information shortly before leaving DIRTT's employ. (*Id.* at ¶¶ 46-50). The information misappropriated by Mr. Henderson represents a laundry list of files that would prove most useful in setting up a competing business like Falkbuilt or Falk Mountain States. (*Id.* at ¶ 51-53). The ICE files and Standard Factory Net ("SFN") summaries in the files taken by Mr. Henderson could also be used against DIRTT in bidding for projects because they contain pricing information, among other valuable data. (*Id.* at ¶ 54).

Ms. Buczynski also falsely informed her colleagues that she was not leaving DIRTT to work on behalf of Falkbuilt, and also took DIRTT Confidential Business Information. As soon as she left DIRTT's employ she began using DIRTT Confidential Business Information obtained from DIRTT and a DIRTT distribution partner to compete against DIRTT. (Dkt. No. 2 at ¶ 70 and Ex. H thereto).

To date, over 50 employees have left DIRTT's employ to join Falkbuilt. (Dkt. No. 2 at ¶ 19). It is reasonable to infer, based on the conduct of both Mr. Henderson and Ms. Buczynski, and the multiple other former DIRTT employees who all set up personal Dropbox accounts shortly before their departures from DIRTT, that at least some of these individuals have also taken, and are using, DIRTT Confidential Business Information on behalf of their new employer, Falkbuilt. (*Id.* at ¶ 78).

While Falkbuilt has publicly claimed that it is not competing with DIRTT, DIRTT believes, and has recently developed evidence, that Falkbuilt has constructed its business in the United States by copying DIRTT, including unlawfully using DIRTT Confidential Business Information. (Dkt. No. 2 at ¶ 27). Publicly, Falkbuilt has proclaimed that it is operating an entirely different business than DIRTT, with different products and different targets. If this was true, given the size of the market for the interiors of office buildings, hospitals and educational institutions, the two companies would hardly encounter each other. In reality, though, Falkbuilt has immediately and directly targeted DIRTT's prospective and existing customers using what appears to be DIRTT Confidential Business Information to undercut DIRTT in an attempt to steal customers and/or business from DIRTT. Falkbuilt's webpages and designs also mimic DIRTT's appearance. (*Id.* at ¶ 19). Ms. Buczynski has additionally referred to Falkbuilt as the "new DIRTT". (*Id.* at ¶ 76).

In terms of DIRTT's departing employees, while DIRTT is not seeking to enforce Mr. Smed's non-solicitation agreement in this proceeding, Mr. Smed's close contact with the departing employees, and the known wrongful conduct of Mr. Henderson and Ms. Buczynski, supports the issuance of a preservation order to preserve essential evidence, and a preliminary injunction to preserve the status quo and prevent Defendants from using DIRTT Confidential Business Information to compete unfairly against DIRTT.

## III.     SUPPORTING AUTHORITY

To obtain injunctive relief, DIRTT must show that: (1) it has a substantial likelihood of success on the merits of the case; (2) it will suffer irreparable harm without the injunction; (3) its threatened injury outweighs the harm that the injunction will cause to the Defendants; and (4) the injunction is not against the public interest. *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003). Certain types of injunctive relief, *i.e.* "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits" are "disfavored" under 10th Circuit law. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). However, DIRTT does not seek this type of relief. DIRTT seeks to preserve the status quo. The Court must consider the status quo at the time before the dispute began, and if an injunction would not disturb that status, an injunction is not disfavored. *ClearOne Communications, Inc. v. Chiang*, No. 2:07-CV-37 TC, 2007 WL 3231524, at *3 (D. Utah Oct. 30, 2007), *modified*, No. 2:07-CV-37-TC, 2009 WL 273325 (D. Utah Feb. 4, 2009).

A finding of irreparable harm may be based on factors such as the "difficulty in calculating damages ... and [the] existence of intangible harms such as loss of goodwill or competitive market position." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004). The potential loss of key business partner relationships and the accompanying adverse

impact on a plaintiff's competitive market position and other harm that is not solely compensable by monetary damages supports a finding of irreparable harm. *Neways Inc. v. Mower*, 543 F. Supp. 2d 1277, 1290 (D. Utah 2008).

It is not necessary that DIRTT's right to prevail in this case be absolutely certain or wholly without doubt in order for the issuance of a limited preliminary injunction to be justified here. Rather, if the other elements identified above are present, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 781-82 (10th Cir. 1964). DIRTT's additional remedies, such as damages, or purge of tainted information, may be decided at a later date.

An order directing preservation of documents, electronically stored information, and related sources of information (e.g., portable media) is appropriate in situations where there is a risk of spoliation, tampering, or other loss of information pertaining to an ongoing claim. Such an order is appropriate when it is not superfluous and is in the best interests of the parties. *Lifetime Products, Inc. v. Correll, Inc.*, No. 02-CV-01366-TC (D. Utah Nov. 19, 2003) (order granting motion for preservation order). The issuance of a preservation order is, in essence, an injunctive remedy, and should be granted upon an adequate showing that equitable relief is warranted. *Madden v. Wyeth, Inc.*, No. 3-03-CV-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. April 16, 2003); *Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc.*, No. Civ. 3-95-784, 1995 WL 783610, at *3 (D. Minn. Oct. 20, 1995). In considering whether equitable relief is warranted, the court should consider the potential for irreparable injury, the danger that acts to be enjoined will occur, and the adequacy of other remedies to address potential injuries. *Humble Oil & Refining Co. v. Harang*, 262 F. Supp. 39, 43 (E.D. La. 1966). While not entirely dispositive, the court should also consider

the increased burden entering such an order will place on the parties. *Id.* at 44. If the court finds that a real danger of irreparable harm exists, and does not believe observance of the order will be overly burdensome or superfluous, the court should grant a motion for the issuance of a preservation order.

## IV.    ARGUMENT

The injunctive relief sought here is limited, not disfavored, and of a type routinely granted. DIRTT simply seeks a preservation order preventing the destruction of relevant evidence, and then a preliminary injunction order prohibiting Defendants from further using DIRTT Confidential Business Information and restoring the status quo to a state as before such use began.

The requested preservation order is narrowly-tailored and seeks only preservation of relevant information.  With regard to the request for a preliminary injunction, DIRTT seeks a hearing, at which time it will present evidence in support of its request for relief. In a separate motion, DIRTT is also respectfully requesting an expedited discovery period prior to such a hearing. During that period the parties, and subsequently the Court, can more specifically focus on what information is at issue, beyond the information already identified by DIRTT, so that DIRTT can adequately seek to protect itself from the misappropriation and misuse of its DIRTT Confidential Business Information.

If the Court is not inclined to grant the motion for expedited discovery, DIRTT requests an immediate evidentiary hearing where it will present its evidence gathered to date. It is prepared to present witnesses and evidence in support of its position, including forensic evidence and third-party witnesses. Through this submission, DIRTT presents a preview of its position, rather than a comprehensive statement of its factual position. For example, DIRTT has possession of dozens of hard drives of departing employees confirming wrongful activities prior to those employees'

departure from DIRTT. DIRTT will present such information at a hearing pursuant to the Court's procedures.

The requested preservation order and preliminary injunction is limited to prohibition, and is not mandatory in nature. Moreover, it does not approach the full remedies that Plaintiff seeks and could be awarded at trial (though Plaintiff may well seek additional relief from the Court depending on information ascertained in discovery).

And, Defendants have no real interest in opposing the relief sought by DIRTT. While DIRTT disagrees, Falkbuilt has publicly-maintained the position that it is not competing with DIRTT, meaning that is it not using information about DIRTT's existing and potential customers. Falkbuilt also maintains that it markets different products, which means that it is not using DIRTT's technical product information. As such, the entry of this limited injunction should not affect Defendants in any way unless Defendants' statements are false and they are wrongfully using DIRTT Confidential Business Information, as DIRTT believes.

### A.     DIRTT is Entitled to An Initial Preservation Order

A party is entitled to a preservation order when it reasonably believes that notice of the proceedings may result in the destruction of evidence. In this case, DIRTT already has evidence that Defendants, or their agents, have placed DIRTT Confidential Business Information on portable drives or cloud media. DIRTT also possesses information that Defendants, or their agents, have misled DIRTT regarding their activities related to their departures from DIRTT. As such, it is imperative that the Court enter the initial preservation order requiring that such easily disposable electronic information be preserved. Once counsel for Defendants appear, DIRTT is confident that appropriate preservation protocols can be negotiated. The preservation order does not burden Defendants in any manner because they have a duty to preserve information in connection with this case.

A preservation order will be neither superfluous nor burdensome, and the harm if an order is not entered will be irreparable. The loss of discoverable information is likely in the absence of such and order, and there are no other available remedies to prevent such a harm.

        (1)      <u>Irreparable Harm in the Event an Order is Not Entered and Inadequacy of Other Remedies</u>

This is a trade secret case, and Plaintiff's evidence will demonstrate efforts by Defendants to misappropriate Plaintiff's confidential information through former DIRTT employees, including Ms. Buczynski. Courts have recognized that information regarding such misappropriation is difficult to obtain. *Apex Tool Group, LLC v. DMTCO, LLC et al.*, No. 3:1-cv-372, 2014 WL 6748344, at *15 (S.D.Ohio, Nov. 25, 2014) *citing Lumenate Tech, LP v. Integrated Data Storage, LLC*, No. 13 C 3767, 2013 WL 5974731, at *5 (N.D.Ill. Nov. 11, 2013). "The plaintiff in a trade secret misappropriation action faces a difficult challenge in ferreting out evidence of misappropriation. The holder of a trade secret 'takes a substantial risk that the secret will be passed on to his competitors, by theft or by breach of a confidential relationship, in a manner not easily susceptible of discovery or proof.'" *Veteran Med. Prod., Inc. v. Bionix Dev. Corp.,* No. 1:05-CV-655, 2008 WL 696546, at *9 (W.D. Mich. Mar. 13, 2008) *quoting Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 490, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974).

The reasons for the "difficult challenge in ferreting out evidence of misappropriation" are not difficult to imagine – a defendant (or defendants) willing to take improper steps to misappropriate information are likely to also take steps to cover their tracks. Such is the case here, particularly where departed employees have misrepresented the nature of their intentions upon departure. (Dkt. No. 2 at ¶¶ 62, 70). Mr. Henderson, in particular, represents a substantial risk with respect to spoliation of evidence in his possession, custody and control given his status as a felon convicted of crimes of fraud and deceit. (Dkt. No. 2 at ¶¶ 35-37).

There is no adequate remedy to preserve relevant information other than the requested order. If evidence concerning Defendants' misappropriation of DIRTT Confidential Business Information is destroyed then Plaintiff's ability to prove its claims will be severely prejudiced. Given the circumstances of the case, reliance on Defendants' knowledge of and willingness to adhere to the default duty to preserve relevant evidence proves inadequate.

        (2)    <u>There is No Increased Burden on the Parties to Comply With a Preservation Order</u>

Conversely, there will be no increased burden on Defendants to preserve relevant evidence. The Federal Rules of Civil Procedure require such preservation, though Courts have recognized that in circumstances where there is a heightened threat of spoliation, an order such as the one requested here is appropriate. Additionally, a preservation order will only require Defendants to refrain from destroying evidence; it will not require them to undertake any significant affirmative action that could prove burdensome.

      **B.**      **DIRTT is Entitled to Preliminary Injunction**

Whether or not the Court enters the temporary restraining order, DIRTT is entitled to a hearing to present its evidence, and following presentation, to an appropriate preliminary injunction order restraining Defendants from misappropriating DIRTT's trade secrets under Utah, Pennsylvania, and Federal law. The requested preliminary injunctive relief is reasonable under the circumstances and is in line with the relief to which DIRTT is entitled.

        (1)    <u>DIRTT is likely to prevail on the merits</u>

Plaintiff DIRTT can and will establish through the presentation of evidence that its DIRTT Confidential Business Information qualifies as a trade secret under Utah, Pennsylvania, and Federal laws (which are substantially similar for the purposes of and relief sought by this motion)

and was misappropriated by Defendants, entitling Plaintiff to an injunction. *Mountain Am. Credit Union v. Godfrey*, No. 2:06-CV-481 TS, 2006 WL 2129465, at *2-3 (D. Utah July 28, 2006).

As set forth in the Verified Complaint, DIRTT is able to prove, and expects that discovery will enhance such proof, that the corporate Defendants engaged in a widespread scheme to obtain DIRTT's Confidential Business Information through the individual Defendants and the corporate Defendants' employees.

        (a)     *DIRTT's Confidential Business Information is protectable as a trade secret*

To begin with, DIRTT has substantial confidential information that is protectable as a trade secret under Utah, Pennsylvania, and Federal laws. A "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Utah. Code § 13-24-2. Pennsylvania law and the Federal Defend Trade Secrets Act define "trade secret" in substantially similar language. 12 P.S. § 5302; 18 U.S.C. § 1836.

DIRTT sells prefabricated modular interior systems to hospitals, educational institutions, and office buildings. DIRTT combines innovative product design with its industry-leading, proprietary ICE Software ("ICE Software" or "ICE"), and technology-driven, lean manufacturing practices and sustainable materials to provide an end-to-end solution for the traditionally inefficient and fragmented interior construction industry. DIRTT creates customized interiors with the aesthetics of conventional construction, but with greater cost and schedule certainty, shorter lead times, greater future flexibility, and better environmental sustainability than conventional

construction. (Dkt. No. 2 ¶ 5). It competes with any other company that performs interior construction. If a hospital is building a new wing, it could use DIRTT, or a traditional or different method, to build the interior of the hospital. DIRTT's products are different from traditional construction in many ways, including that DIRTT's interiors are manufactured offsite and can be installed rapidly and with lower labor costs. (*Id.* at ¶¶ 5-6). Nevertheless, DIRTT, as with any other company, must compete for prospects and clients. DIRTT also works through a network of partners ("Distribution Partners"). The Distribution Partners make an independent commitment to maintain the confidentiality of DIRTT Confidential Business Information. (*Id.* at ¶¶ 6, 86).

DIRTT derives substantial economic value from maintaining the secrecy of its DIRTT Confidential Business Information, including, among other things, its pricing, its customer, prospect and supplier information, its sales figures and projections, its marketing and sales strategies, its design specifications, and its strategic and business plans. DIRTT has incurred significant costs and expenses developing its DIRTT Confidential Business Information. DIRTT's margin information, client prospect and needs list, client budget information, technical know-how, and corporate strategy all have tremendous corporate value, and derive that value from their secrecy. For the same reason, such information would be immensely valuable to a competitor. (Dkt. No. 2 at ¶ 92). Any global theft of such information would allow a competitor, indirect or otherwise, to bid against DIRTT for a particular project. (*Id.*). DIRTT takes reasonable measures to protect and maintain the secrecy of its DIRTT Confidential Business Information by establishing expectations to maintain such information as confidential through confidentiality agreements, policies, password and login protections, and other means. (*See, e.g., id.* at ¶¶ 30-31, 58, 68-69, 86, and 91-95).

        (b)    *Defendants Have Misappropriated DIRTT Confidential Business Information*

DIRTT's co-founder established Falkbuilt after leaving DIRTT.'s employ. (Dkt. No. 2 at ¶ 19). Falkbuilt publicly denies it is a competitor, but it is competing for the same market and for the same customers. Regardless of the interior construction products being offered (which are likely similar and derived from DIRTT innovations), offering solutions to the same market and addressing the same design needs is competition in and of itself. Not only is it obvious that whatever company that can build the interior of a hospital, or university building is a competitor to DIRTT, but DIRTT also has evidence that Falkbuilt is contacting DIRTT prospects and customers. (*Id.* at ¶¶ 63, 73-74). At a hearing, DIRTT will present its employees and the employees of one of its partners to demonstrate the value of its DIRTT Confidential Business Information to competitors, and that Falkbuilt is attempting to compete directly with DIRTT. It is apparent from evidence that has been collected and will be presented that Defendants have misappropriated DIRTT's trade secrets.

The term "misappropriation" includes "(a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (b) disclosure or use of a trade secret of another without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: (A) derived from or through a person who had utilized improper means to acquire it; (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (iii) before a material change of his position, knew or had reason to know that it

was a trade secret and that knowledge of it had been acquired by accident or mistake." Utah. Code § 13-24-2.[5]

At the hearing, forensic evidence will show that Mr. Henderson and Ms. Buczynski used tools to improperly access and copy DIRTT Confidential Business Information. (*Id.* at ¶¶ 46, 48, 71-72). There is no possible legitimate use of the information taken by these former DIRTT employees, who immediately began working for or on behalf of Falkbuilt. Thus, DIRTT reasonably believes that evidence obtained in expedited discovery will show that Defendants are presently using DIRTT Confidential Business Information to benefit Falkbuilt and directly compete with DIRTT. This alone constitutes misappropriation of DIRTT trade secrets, as such information was: (a) taken with Falkbuilt, LLC's, Falkbuilt Ltd.'s, and Falkbuilt Mountain States LLC's knowledge that it was acquired improperly from DIRTT; (b) used without DIRTT's consent after being acquired by such improper means; and (c) supplied by persons who owed a duty of secrecy to DIRTT.

Multiple other former DIRTT employees who now work for or on behalf of Falkbuilt, all set up personal Dropbox accounts within weeks, or even days, before terminating their employment with DIRTT. (Dkt. No. 2 at ¶ 78). Other employees met with Falkbuilt in advance of leaving DIRTT, despite public statements by Falkbuilt denying any solicitation. (*Id.* at ¶ 28). Moreover, Falkbuilt appears to be targeting current and prospective DIRTT customers, and is likely using DIRTT Confidential Business Information obtained from these former DIRTT employees to undercut DIRTT bids. (*Id.* at ¶¶ 26, 28).

---

[5] The Pennsylvania Uniform Trade Secret Act and the Federal Defend Trade Secrets Act have similar requirements.

(2)     DIRTT Will Suffer Irreparable Harm Absent an Injunction

While DIRTT is aware of the misappropriation of certain DIRTT Confidential Business Information by Falkbuilt and its employees and partners, DIRTT anticipates that additional discovery will show the full extent of that misappropriation, and that Falkbuilt has been relying upon DIRTT Confidential Business Information not only to model its business after DIRTT, but is also using that information in an attempt to take DIRTT's prospective and current customers by undercutting DIRTT's bids on projects. Despite the fact that the North American interior construction business market is quite large, DIRTT has encountered Falkbuilt as a competitor on targeted projects at an uncanny rate, almost immediately after Falkbuilt opened its doors. (Dkt. No. 2 at ¶ 28). An example of the obvious misappropriation of DIRTT Confidential Business Information is that numerous Pennsylvania projects known to Ms. Buczynski at DIRTT were immediately targeted by her on behalf of Falkbuilt. (*Id.* at ¶ 74). Another obvious example is Lance Henderson uploading over 35 gigabytes of DIRTT data to his personal "Google Drive" and/or Apple "iCloud" cloud computing servers, and the subsequent determination that these files contained DIRTT Confidential Business Information. (*Id.* at ¶ 46). This conduct is immeasurably harmful to DIRTT's business positions. DIRTT's specific harms include (a) the need to adapt business planning, costing, and quoting to the presence of a new competitor which claims to be "DIRTT 2.0" and that is in possession of DIRTT's prior planning, costing and quoting information and practices, (b) uncertainty in the customer base as to the role Defendants will play in the marketplace going forward, (c) loss of goodwill with its prospective and existing customers, and (d) loss of competitive market position. This is the type of harm courts have routinely found to constitute irreparable harm. *ClearOne Communications, Inc.*, 2007 WL 3231524, at *10 (threats to ability to maintain position and opportunities in market constitute irreparable harm); *Neways Inc. v. Mower*, 543 F. Supp. 2d 1277, 1289 (D. Utah 2008) ("A finding of irreparable harm may

17

be based on factors such as the "difficulty in calculating damages ... and [the] existence of intangible harms such as loss of goodwill or competitive market position.").

(3)     The Balance of Hardships Favors Entry of the Requested Injunction

The balance of the hardships also favors an injunction. While DIRTT maintains a proprietary interest and right to protect its DIRTT Confidential Business Information from being used by its competitors, Defendants have no cognizable interest in utilizing improperly-gained confidential information. Thus, the balance of hardships strongly favors the requested injunction. *See ClearOne Communications*, 2007 WL 3231524 at *10-11 (no balancing is warranted when the resulting harm would be self-inflicted); *citing Utahns For Better Transp. v. U.S. Dept. of Transp.*, Nos. 01–4216, 01–4217, 01–4220, 2001 WL 1739458, at *2 (10th Cir. Nov. 16, 2001).

(4)     The Injunction Sought by DIRTT is Not Against the Public Interest

The public's interest in "honoring contractual obligations and fostering honest competition" outweighs the interest a competitive marketplace. *ClearOne Communications*, 2007 WL 3231524, at *11, *modified*, No. 2:07-CV-37-TC, 2009 WL 273325 (D. Utah Feb. 4, 2009) *quoting Fisher Bioservices, Inc. v. Bilcare, Inc.*, No. Civ.A. 06–567, 2006 WL 1517382, at *21 (E.D.Pa. May 31, 2006) ("Granting equitable relief such as a preliminary injunction may serve the public interest if it will 'discourage ... the wrongful use of confidential information and trade secrets and the disavowal of freely contracted obligations.' "), *quoting Nat'l Bus. Servs., Inc. v. Wright*, 2 F.Supp. 2d 701, 709 (E.D.Pa. 1998). In this case, issuing the preliminary injunction will "foster honest competition," and there is no other public interest that would be adversely affected by the injunction.

(5)     The Injunction Sought is Not Disfavored

The requested injunction is neither mandatory nor alters the status quo. It is not mandatory because it simply prohibits the use of DIRTT Confidential Business Information, and does not

seek to enjoin fair competition without resort to misappropriation of trade secrets. Such an injunction merely preserves the status quo at the time before the dispute began. *ClearOne Communications*, 2007 WL 3231524 at \*4. Moreover, DIRTT does not seek the full remedies it could obtain at trial. Following trial Plaintiff will seek the disgorgement of Defendants' profits obtained through use of DIRTT Confidential Information, damages suffered by DIRTT, and prohibition against furthering those opportunities to DIRTT's detriment, with or without DIRTT Confidential Business Information. DIRTT also seeks exemplary and punitive damages. *See Id.*

## V.      CONCLUSION

For all of the foregoing reasons, DIRTT respectfully requests that the Court:

a.      Enter a preservation order requiring Defendants to preserve all DIRTT Confidential Business Information in their possession, custody and control, and all evidence regarding Defendants' use of that information;

b.      Set a date for a preliminary injunction hearing at which Plaintiff will seek a preliminary injunction restraining and enjoining each Defendant, and all persons and entities in active concert with any of them, from disclosing, using or misappropriating any of DIRTT's Confidential Business Information; and

c.      For such other and further relief this Court deems appropriate.

Dated: December 12, 2019                    DIRTT ENVIRONMENTAL SOLUTIONS, INC.


By: /s/ Chad E. Nydegger
One of Its Attorneys

Chad E. Nydegger
Workman Nydegger
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
cnydegger@wnlaw.com




Jeffrey J. Mayer (*pro hac vice to be filed*)

Catherine A. Miller  *(pro hac vice to be filed)*
Timothy K. Sendek  *(pro hac vice to be filed)*
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, Illinois 60606
Jeffrey.Mayer@akerman.com
Catherine.Miller@akerman.com
Tim.Sendek@akerman.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Motion for Plaintiff's Motion for an Ex-Parte Preservation Order and, Following Expedited Discovery, a Limited Preliminary Injunction to Preserve the Status Quo will be personally served on all defendants by process server.

/s/ Chad E. Nydegger