IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DIRTT ENVIRONMENTAL SOLUTIONS, INC.; DIRTT ENVIRONMENTAL SOLUTIONS LIMITED,<br><br>Plaintiffs,<br>v.<br><br>LANCE HENDERSON, KRISTY HENDERSON, FALKBUILT, LLC and FALK MOUNTAIN STATES, LLC.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:19-cv-144 DPB<br><br>District Judge David P. Barlow<br><br>Chief Magistrate Judge Dustin B. Pead |

This matter is before the court on several related motions.[1] Defendant, Falkbuilt Ltd., "seeks an order protecting it and 29 independently owned dealers from discovery until Plaintiff has identified its alleged trade secrets." (ECF No. 72 p. 2.) The Henderson Defendants (Lance Henderson, Kristy Henderson and Falk Mountain States, LLC,) also seek an order requiring Plaintiffs to identify its alleged trade secrets, asserting their own arguments, and joining in on Falkbuilt Ltd.'s motion. (ECF No. 78.) Finally, Falkbuilt Ltd. moves the court for a protective order and order quashing Plaintiffs' subpoenas to Falkbuilt's 29 independently owned dealers, asserting similar arguments, that the trade secrets must be identified with reasonable particularity. (ECF No. 77.) As set forth below the court denies each of these motions.

BACKGROUND

Plaintiffs offer products and services for the "digital design of component, prefabricated construction to build out interior spaces in buildings (referred to as "interior construction")."

---

[1] The case is referred to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(A) from Judge Barlow. The court elects to decide the motions on the basis of the written memoranda. DUCivR 7-1.

Amended Compl. ¶ 4, ECF No. 117. Plaintiffs use a "proprietary software and virtual-reality visualization platform", along with integrated manufacturing to design, manufacture, and configure interior spaces. This is done via the use of proprietary "ICE Software" and innovative manufacturing practices. In short, Plaintiffs seek to provide an "end-to-end solution for the traditionally inefficient and fragmented interior construction industry." *Id.* at ¶ 6.

Plaintiffs claim certain Defendants left DIRTT to become employees of Falkbuilt. These individuals also allegedly took information utilized while in DIRTT's employ, including designs, know-how, and certain trade secrets such as pricing information and customer contact information. Much of the exodus of alleged trade secrets revolves around the departure of Mogens Smed, a resident of Calgary, Alberta, Canada, who was the "Calgary-based CEO" and exercised a lot of control of DIRTT Inc. and DIRTT Ltd. *Id.* at ¶¶ 19-21. Mr. Smed left DIRTT in September 2018, and according to Plaintiffs, Falkbuilt, Inc. (a Delaware corporation) and Falkbuilt Ltd. (a Canadian company) were created by departed DIRTT employees, including Mr. Smed, to compete with Plaintiffs. Plaintiffs filed suit in December 2019 bringing a host of claims including, *inter alia,* violation of the Utah Uniform Trade Secrets Act (Utah Code § 13-24-1, *et seq*); violation of the Federal Defend Trade Secrets Act (18 U.S.C. § 1836); breaches of contracts; violation of the Pennsylvania Uniform Trade Secrets Act (12 P.S. § 5302); violation of the Lanham Act (15 U.S.C. § 1501, *et seq*.); and violation of the Colorado Consumer Protection Act (Colo. Rev. Stat § 6-1-101, *et seq*.).

DISCUSSION

The current question before the court is whether Plaintiffs have identified their alleged misappropriated trade secrets with enough specificity that discovery may commence in earnest? The parties' instant dispute is not too uncommon. A party discovers some alleged trade secrets

2

missing, perhaps taken by a former employee or a customer. The party then seeks to prevent the use of those alleged trade secrets by others, who often end up competing with the trade secret holder. The difficulty lies in the scope of what constitutes a trade secret. Naturally, a plaintiff will claim nearly everything is a trade secret, with a broad sweeping brush trying to stifle competition. In contrast, a defendant will seek to paint a much smaller picture, arguing for a narrow construction, often pointing to information that undermines the validity of a trade secret. The other natural problem of these conflicting viewpoints, is the use of discovery. A plaintiff may identify a molehill, and then seek a mountain of discovery, trying to determine what if anything was taken, where it was taken, and by whom. Meanwhile the defendant will seek to prevent a plaintiff from shifting its case in the sand, simply modifying it to fit whatever information is found in discovery. This scenario frames the question before the court. Defendants assert Plaintiffs have not given enough detailed information about its trade secrets that were allegedly stolen. And Plaintiffs argue it has done enough to move forward with discovery.

### I.     Falkbuilt Ltd.'s Motion for Protective Order from Discovery

Falkbuilt Ltd. seeks an order protecting it, and 29 independently owned dealers from discovery until Plaintiff has identified its trade secrets. Rule 26(c) provides that a

> A party or any person from whom discovery is sought may move for a protective order [and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

Fed. R. Civ. P. 26. Falkbuilt argues Plaintiffs are required to identify with "reasonable particularity" what it claims are trade secrets, and to date, Plaintiffs have failed to do so.

In response, Plaintiffs contend the motion is "legally unfounded and baseless given the substantial identification of trade secrets DIRTT has already provided." (ECF No. 76 p. 2.) And, there is no case law supporting Falkbuilt's position, that a trade secret case is limited to information directly related to pre-identified trade secrets.

As in other discovery disputes, the base standard by which this dispute is judged against is Rule 26. Federal Rule of Civil Procedure 26(b)(1) provides that

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

F.R.C.P. 26(b)(1). At this stage discovery is broad, but it is not without constraints.

In a trade secret case, such as this one, "[t]here is no privilege excepting trade secrets from discovery, but 'courts must exercise discretion to avoid unnecessary disclosures of such information.'" *L-3 Commc'n Corp. v. Jaxon Eng'g & Maint., Inc., 2011 WL 10858409,* at *1 (D. Colo. Oct. 12, 2011) (citing *Dura Global Techs., Inc. v. Magna Donnelly, Corp.*, 2007 WL 4303294, at *2 (E.D. Mich. Dec. 6, 2007) (quoting *Automeds Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 925 (N.D. Ill. 1974)). The protective order in this case provides for an "Attorney Eyes Only" designation. So the potential harm from disclosing sensitive information is minimalized.

As noted by this court previously, "a party is required to identify with reasonable particularity what it claims constitutes a trade secret." *Cvent, Inc. v. RainFocus, Inc.* 2019 WL 7837157, at *2 (D. Utah April 4, 2019) (citing *L-3 Commc'n Corp*, 2011 WL 10858409, at *1 quoting *Automeds Techs*, 160 F. Supp. at 926). This requires a plaintiff

to describe the trade secrets at issue with "...adequate specificity to inform the defendants what is alleged to have [been] misappropriated." *Storagecraft Tech. Corp. v. Symantec Corp.*, 2009 WL 361282, at *2 (D. Utah February 11, 2009). Thus, the question is whether Plaintiffs have satisfied the "reasonable particularity" standard? Plaintiffs point to the complaint, the Preliminary Injunction Order, and cite to "subsequent correspondence" as the bases for meeting the standard. (ECF No. 76 p. 3.)

As a starting point, "generic references to common design categories are insufficient to satisfy the reasonable particularity standard." *Cvent, Inc.*, 2019 WL 7837157, at *3 (citing *L-3 Commc'n Corp.*, 2011 WL 10858409, at *2). Attached to Plaintiffs' Complaint is an exhibit filed under seal that Plaintiffs argue helps meet the reasonable particularity standard. This exhibit provides pricing for a "typically used headwall."[2] Other sealed exhibits reference filenames of projects that were allegedly downloaded and taken, references to CAD files, and marketing materials from Plaintiffs' completed construction projects.

The Preliminary Injunction Order, which Falkbuilt consented to, directs each Defendant to "disclose or itemize all information in its possession, custody or control" pertaining to "customer contact information, prospective or current customer projects or preferences, pricing, estimates, ICE files, Standard Factory Net ("SFN") summaries, job costing, sales figures and projections, marketing and sales strategies, design specifications and drawings, and strategic and business plans, …." (ECF No. 61 p. 3.) In the correspondence, Plaintiffs refer to the Preliminary Injunction Order noting the categories of information it has identified as trade secrets, to wit, customer contact information, pricing estimates, ICE files, etc.

---

[2] The exhibit is filed under seal and the court refers to the contents of the filing generally to protect it.

Taken together, the court finds that Plaintiffs' references to its trade secrets are not generic references. While broad categories are identified, such as "pricing estimates" "sales figures" or "ICE files", the court believes they are specific enough in the context of this litigation to meet the reasonable particularity standard, because they refer to DIRTT's pricing estimates, its sales figures or ICE files. Further, they were the subject of a stipulated Preliminary Injunction order. The court seriously doubts Defendants would enter into such a stipulation without at least a basic level of understanding concerning what the information comprised. In contrast in *Cvent*, the plaintiff listed the "architecture, design, software code" without providing specifics regarding its source code. Defendants should be able to distinguish between its own confidential information and that from Plaintiffs even in the categories listed by Plaintiffs.

Accordingly, the court will deny Falkbuilt Ltd.'s motion seeking to protect it from discovery until Plaintiffs identify their trade secrets with reasonable particularity.

## II. Henderson Defendants' Motion to Require Plaintiff to Identify Alleged Trade Secrets

The Henderson Defendants make similar arguments to those brought by Falkbuilt Ltd.'s in its motion. They argue against "fishing expeditions" and note that trade secrets must be identified with reasonable particularity. They further assert that the "'growing consensus' is for trade secret identification to occur prior to discovery" and cite to a case from the Northern District of Texas for that proposition, *StoneEagle Servs., Inc. v. Valentine*, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013). The court disagrees that *StoneEagle* stands for the proposition that discovery should not begin until trade secrets are identified with reasonable particularity. That court even pointed to the "unique history" of the case in which no discovery had been served and no motion to compel filed. *Id.* at *4. Certainly, the court agrees that a litigant must identify their

trade secrets with reasonable particularity, but the lack of doing so need not halt all discovery. And, as outlined above, in the context of this case, the court finds Plaintiffs have met this standard.

Therefore, the court will deny the Henderson Defendants' Motion.

### III.     Falkbuilt Ltd.'s Motion for Protective Order and to Quash Subpoenas

Falkbuilt Ltd. seeks a protective order and an order quashing Plaintiffs' subpoenas issued to Falkbuilt's 29 independently owned dealers. In support Falkbuilt brings three arguments. First, Plaintiff must identify its trade secrets with reasonable particularity. Second, Falkbuilt alleges the subpoenas are "overly broad, unduly burdensome and exceed the scope of allowable discovery under FRCP 26(b)(1)", in other words, they are irrelevant and not proportional to the needs of this case. And third, "Plaintiff's 29 subpoenas pose a substantial threat of harming valuable business relationships with Falkbuilt's independently owned dealers." (ECF No. 77 p. 3.) As set forth above, the court rejects Falkbuilt Ltd.'s first argument. The court turns to the remaining arguments, but initially the court considers whether Falkbuilt has standing to move to quash or otherwise object to the subpoenas at issue.

Under Rule 45(c), the court "shall quash or modify [a] subpoena if it ... requires disclosure of privileged or other protected matter and no exception or waiver applies, or [if it] subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iii), (iv). Generally, a party does not have standing to object to a subpoena issued to a third party, unless the party challenging the subpoena has a personal right or privilege with respect to the subject matter sought by the subpoena. *Richards v. Convergys Corp.* 2007 WL 474012, at *1 (D. Utah February 7, 2007); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D.Kan.1999) ("A motion to quash or modify a subpoena duces tecum may only be made by the party to whom the

subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena."); *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Colo.1997) (noting the initial question is whether the defendant has standing to file a motion to quash the subpoena).

Here, Falkbuilt asserts it has standing to bring the motion, because the subpoenas "pose a substantial threat of harming valuable business relationships with [its] independently owned dealers." (ECF No. 77.) In support, Falkbuilt cites to *Winona PVD Coatings, LLC v. Excel Enterprises, LLC*, 2016 WL 9347091, at *3 (N.D. In. April 18, 2016), a case from another district. In *Winona*, the defendants served their first discovery requests in the form of subpoenas on "18 non-parties, who constituted substantially all of Winona's customers and suppliers." *Id.* at *1. The court found the defendant had standing to bring the motion based on its "own concerns that the subpoenas are unnecessarily interfering with its ongoing business relationships with the subpoenaed non-parties." *Winona*, 2016 WL 9347091, at *3.

Falkbuilt seeks to draw the same analogy here, stating its business relationships with the independent dealers will be harmed. The court is not persuaded that the business relationship between Falkbuilt and its independent dealers is sufficiently analogous to give it standing. The third-parties here are independent dealers, not customers or suppliers for Falkbuilt, and Falkbuilt fails to set forth any specifics as to the alleged harm. Moreover, in *Richards v. Convergys Corp.*, 2007 WL 474012, a decision from this court also cited to by Falkbuilt, the court found standing based on a personal right in employment records. No such right exists here.

Finally, Plaintiffs note that they have agreed to a phased approach, "where the subpoenaed parties would respond to certain critical requests, DIRRT would analyze those responses, and then inform he party if it needed to respond to the remaining requests." (ECF No.

8

81.) This approach appears sound and certainly would address Falkbuilt's concerns about proportionality, even if the court were to find it had standing to contest the subpoenas.

Falkbuilt's motion, therefore, will be denied due to a lack of standing.[3] *Warkins v. Piercy*, 2016 WL 7188284, at *3 (D. Kan. Dec. 12, 2016) (denying motion to quash due to a lack fo standing); *Windsor*, 175 F.R.D. at 668 (finding the defendant failed to set forth a "specific privilege or basis" to establish standing);

## ORDER

For the reasons set forth above,

Falkbuilt Ltd.'s Motion for Protective Order (ECF No. 72.) is DENIED.

The Henderson Defendants' Motion to Require Plaintiffs to Identify its Alleged Trade Secrets (ECF No. 78.) is DENIED.

Falkbuilt Ltd.'s Motion for Protective Order and to Quash Subpoenas (ECF No. 77.) is DENIED.

DATED this 25 January 2021.

_____
Dustin B. Pead
United States Magistrate Judge

---

[3] The court makes no determination on the breadth of the subpoenas.

9