THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DIRTT ENVIRONMENTAL SOLUTIONS, INC. and DIRTT ENVIRONMENTAL SOLUTIONS LTD.,<br><br>                              Plaintiffs,<br><br>v.<br><br>LANCE HENDERSON, KRISTY HENDERSON, and FALK MOUNTAIN STATES, LLC,<br><br>                              Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [201] MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. PROC. 60(b)**<br><br>Case No. 1:19-cv-144 DBB<br><br>District Judge David Barlow |

Before the court is Plaintiffs' Motion for Relief from Judgment Pursuant to Fed. R. Civ. Proc. 60(b) (Motion).[1] Having considered the briefing and the relevant law, the court concludes the motion may be resolved without oral argument.[2] For the reasons stated herein, the court DENIES the Motion.

## BACKGROUND

In 2003, Mogens Smed and two others founded Plaintiff DIRTT Environmental Solutions, Ltd. (DIRTT, Ltd.).[3] DIRTT, Ltd. "is a Canadian company, incorporated in the Province of Alberta and with its headquarters and principal place of business in Calgary, Alberta, Canada."[4] It now is a public company and is listed on the Toronto Stock Exchange.[5]

---

[1] ECF No. 201, filed September 9, 2021.

[2] *See* DUCivR 7-1(f).

[3] Canadian Statement of Claim (Exhibit 1 to Falkbuilt Defendants' Motion to Dismiss First Amended Complaint) at ¶¶ 4-5, ECF No. 134-1, filed November 19, 2020.

[4] First Amended Complaint at ¶ 2, ECF No. 117, filed October 20, 2020.

[5] Statement of Claim at ¶ 10.

In addition to founding DIRTT, Ltd., Smed was its CEO for 14 years and then its Executive Chairman until September 2018, when DIRTT, Ltd. terminated his employment.[6] DIRTT, Ltd. describes Smed as one of its "directing minds."[7] Shortly after his termination, Smed founded Defendant Falkbuilt, Ltd. under the laws of Alberta.[8] Falkbuilt, Ltd.'s offices are in Calgary, Alberta.[9] Smed is the sole director and/or CEO of Falkbuilt, Ltd. and resides Calgary.[10]

DIRTT, Ltd. is the head of an international enterprise. It operates in the United States and in other countries through its affiliated "partners": "DIRTT offers interior construction solutions throughout the United States and Canada, as well as international markets, through a network of independent distribution partners."[11] DIRTT, Ltd. also is the parent[12] of DIRTT, Inc., a company incorporated in Colorado, which Plaintiffs originally described as having "its headquarters and principal place of business in Calgary, Alberta, Canada."[13] Later, Plaintiffs dropped the reference to Calgary and said instead that DIRTT, Inc.'s "principal places of business" were "in Savannah, Georgia and Phoenix, Arizona."[14] Later still, Plaintiffs told a Canadian court that DIRTT, Inc.'s "principal offices [are] located in Calgary, Alberta."[15] Plaintiffs allege that Smed "directly or indirectly" controlled both DIRTT, Ltd. and DIRTT, Inc. as "the Calgary-based CEO."[16]

---

[6] *Id.* at ¶¶ 16, 25.

[7] *Id.* at ¶ 2.

[8] Canadian Amended Amended Amended Statement of Claim (Exhibit 3 to Falkbuilt Defendant's Opposition to Plaintiffs' Rule 60(b) Motion) at ¶ 6, ECF No. 207-3, filed September 30, 2021.

[9] First Amended Complaint at ¶ 20.

[10] Canadian Statement of Claim at ¶ 2, ECF No. 134-1; Canadian Amended Amended Amended Statement of Claim at ¶ 6, ECF No. 207-3; First Amended Complaint at ¶ 150 (describing Smed as the "founder and CEO of Falkbuilt").

[11] Canadian Statement of Claim at ¶ 6.

[12] First Amended Complaint at ¶ 2.

[13] Verified Complaint at ¶ 1, ECF No. 2, filed December 11, 2019.

[14] First Amended Complaint at ¶ 1.

[15] Canadian Amended Amended Amended Statement of Claim at ¶ 2, ECF No. 207-3.

[16] First Amended Complaint at ¶ 21.

DIRTT, Ltd. alleges that Smed misappropriated and misused trade secrets, copyrighted material, and other proprietary information from it while he worked for the Alberta company and after he was terminated from it.[17] Smed and Falkbuilt, Ltd. also engaged in other alleged misconduct by luring away DIRTT, Ltd. employees and customers and directly competing against DIRTT, Ltd.[18]

As a result, DIRTT, Ltd. filed suit against Smed and Falkbuilt, Ltd. in Calgary.[19] The case alleged that Smed, Falkbuilt, and another individual violated the Canadian Copyright Act, the Alberta Business Corporations Act, their contracts, and Canadian common law by the foregoing and other related actions. The claim seeks an interim and permanent injunction, numerous declaratory judgments, compensatory damages, punitive damages, exemplary damages, costs of the action, interest, and accounting of the defendants' revenue and profits. It requests a trial in Calgary, Alberta. The claim says nothing about limiting the conduct challenged, the damages suffered, or the relief sought solely to Canada.[20]

Seven months later, DIRTT, Inc., the subsidiary of DIRTT, Ltd., filed suit in this court.[21] The Complaint states that DIRTT, Inc., which is described as a Colorado company with headquarters and its principal place of business in Calgary, "operates in Canada, the United States and other jurisdictions around the world."[22] In the Complaint, DIRTT, Inc. does not say that it is a subsidiary of DIRTT, Ltd., that DIRTT, Ltd. already has filed a related suit in Calgary,

---

[17] *See* Canadian Statement of Claim at ¶¶ 43-44, 47, ECF No. 134-1.
[18] Canadian Statement of Claim at ¶ 47.
[19] *See* Canadian Statement of Claim.
[20] *See generally*, Canadian Statement of Claim.
[21] Verified Complaint, ECF No. 2.
[22] *Id.* at ¶¶ 1–2.

that the trade secrets at issue belong to DIRTT, Ltd., or even mention DIRTT, Ltd. at all.[23] The Complaint's background section starts by stating:

> Since his difficult departure from DIRTT in September 2018, Mr. Smed and those acting in concert with him, including the newly-formed Falk entities, have engaged in an ongoing attempt to replicate DIRTT's business, products and business model through improper means, including but not limited to utilizing DIRTT confidential information and trade secrets to identify and approach customers and potential customers, utilizing pricing and margin information to undercut DIRTT's quotes, and utilizing DIRTT's patented and trade secret technology to gain an unfair advantage in product offerings.[24]

The Complaint then goes on to allege further detail about Smed's additional and related alleged misconduct and discuss Defendants Lance and Kristy Henderson's misconduct in misappropriating confidential information, setting up Falk Mountain States to compete with DIRTT, Inc., and contacting "at least one prospective customer of DIRTT."[25] The Complaint also alleges misconduct by various non-parties elsewhere in the United States and Canada.[26]

Subsequently, Falkbuilt, Ltd. counterclaimed for defamation and intentional interference with economic relations.[27] DIRTT, Inc. then moved to dismiss the counterclaim on the grounds of *forum non conveniens*, arguing that the counterclaim should be litigated in Canada.[28] The court granted the motion.[29] The Falkbuilt Defendants also moved to dismiss the entire action on the grounds of *forum non conveniens*, in favor of the first-filed action in Calgary.[30] The court

---

[23] *See generally* Verified Complaint.

[24] *Id.* at ¶ 26.

[25] *Id.* at ¶¶ 29–64.

[26] *Id.* at ¶¶ 65–83.

[27] Falkbuilt, Ltd.'s Answer to Verified Complaint and Counterclaim at 29–48, ECF No. 42, filed February 5, 2020; Falkbuilt, Ltd.'s First Amended Counterclaim, ECF No. 62, filed March 18, 2020.

[28] Plaintiff's Motion to Dismiss First Amended Counterclaim, ECF No. 63, filed April 1, 2020.

[29] *See* Order dated March 30, 2021, ECF Nos. 156; Transcript of Hearing on Motion to Dismiss held on 03/30/21, ECF No. 157.

[30] Motion to Dismiss, ECF No. 134, filed November 19, 2020.

granted that motion in part, keeping the part of the action that involved the Utah defendants, who had not joined in the motion.[31]

Plaintiffs later filed a notice appealing the order on the Falkbuilt Defendants' motion to dismiss.[32] That appeal is currently pending before the Tenth Circuit.

On September 9, 2021, Plaintiffs also filed this Motion seeking relief under Rule 60(b).[33]

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" under certain circumstances.[34] Plaintiffs rely on two provisions of Rule 60(b). First, under Rule 60(b)(2), relief may be granted where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."[35] Second, under Rule 60(b)(6), relief may also be appropriate for "any other reason that justifies relief."[36]

As a "general matter the filing of a notice of appeal is an event of jurisdictional significance that confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[37] But the rule in civil cases "is that after an appeal has been taken the district court retains jurisdiction to consider and deny a Rule 60(b) motion on the merits."[38] The court also is permitted to enter an order indicating that it

---

[31] Order dated May 21, 2021, ECF No. 164; Transcript of Motion Hearing held on 05/19/21, ECF No. 166.

[32] Notice of Appeal, ECF No. 171, filed June 16, 2021.

[33] Motion at 1, ECF No. 201.

[34] Fed. R. Civ. P. 60(b).

[35] Fed. R. Civ. P. 60(b)(2).

[36] Fed. R. Civ. P. 60(b)(6).

[37] *Burgess v. Daniels*, 576 Fed. App'x 809, 813 (10th Cir. 2014) (cleaned up) (quoting *United States v. Battles*, 745 F.3d 436 (10th Cir. 2014)).

[38] *Burgess*, 576 Fed. App'x at 813 ("Accordingly, although the district court here lacked jurisdiction to *grant* Mr. Burgess's Rule 60(b) motion, it was not in fact precluded from considering and *denying* the motion on its merits.").

would grant the 60(b) motion on remand, in which case the court of appeals would decide whether to remand the case back to the district court so that it may do so.[39]

## DISCUSSION

### I.  Plaintiffs Have Not Satisfied the Rule 60(b)(2) Standard.

#### A. The Rule 60(b)(2) Requirements

Plaintiffs submitted eleven new email chains in support of their motion. To meet the Rule 60(b)(2) standard, Plaintiffs must show that (1) the emails were newly discovered; (2) they were diligent in discovering the new evidence; (3) the newly discovered evidence "could not be merely cumulative or impeaching," (4) the newly discovered evidence is material; and (5) the newly discovered evidence would probably produce a different result.[40]

The court assumes, without deciding, that Plaintiffs have met the requirements of the first four factors. The fifth factor requires Plaintiffs to show that the newly discovered evidence would "probably produce a different result."[41]

#### B. The Eleven Emails at Issue

The emails chains are summarized as follows:

- 1/29/19 email from Tony Howells at Everlast Capital Partners to Mogens Smed pitching Utah as a production site. Howells' email indicates that Smed showed "little interest" a week earlier, states that Smed may be "more receptive" now, but that Smed should let Howells know if "this is still a non-starter." No response from Smed is included. Howells then forwards the email to Henderson and the two discuss meeting.[42]

- 2/14/19 email from Henderson to Smed forwarding an idea for using "Falk-Tech." Materials attached to the email state that Henderson did "a quick beta-test."

---

[39] Fed R. Civ. P. 62.1.

[40] *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 727 (10th Cir. 1993) (referring to the standard for new evidence post trial); *see also Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005).

[41] *Lyons*, 994 F.2d at 727.

[42] Exhibit D, ECF No. 201-3.

Henderson begins the email with "PLEASE read this idea" and ends with "This is a good idea – Consider it!" Smed responds "This is great Lance."[43]

- 2/17/19 email from Henderson to Smed stating "Had a few ideas I wanted to throw out—some are better than others—so please read them all" followed by various ideas observations, and information, including a construction budget for a different company that Henderson says shows "SLC [Salt Lake City] construction costs." Smed forwards the email to a group email and says, "Some very interesting ideas." [44]

- 2/18/19 email chain between Henderson and Joe Dallimore regarding developing a business plan for a company called NuCo or Take-1. The email references a "Sept 1 launch day," recounts a conversation with Smed about the plan, and states that "Smed will be coming to SLC in two weeks and we will sit down again."[45] Subsequent emails discuss Henderson and Dallimore scheduling a meeting for the two of them.[46]

- Exhibit G is a duplicate of the foregoing email chain except that it does not include the full chain.[47]

- 2/21/19 email from Henderson to Smed regarding various ideas Henderson had about building a "web app." Henderson says "Sorry this is such a long introduction—I'm excited to hear back. If there is no Falk interest, I'd like to present this concept to some friends of mine who I believe would run with the idea to develop[] the platform at which point we could look at it again and consider using the service merely as a client." [48] Henderson also references a prior construction project "in Salt Lake City (home of future Falk manufacturing ;-)."[49] No response from Smed is included.

- 4/2/19 email chain in which Smed asks a Falkbuilt employee to book the Hendersons flights to Calgary.[50] Subsequent emails between the Hendersons and the Falkbuilt employee show the flight plans.[51]

---

[43] Exhibit E, ECF No. 201-4.
[44] Exhibit B, ECF No. 201-1.
[45] Exhibit F, ECF No. 201-5.
[46] *Id.*
[47] Exhibit G, ECF No. 201-6.
[48] Exhibit H, ECF No. 201-7.
[49] *Id.*
[50] Exhibit J, ECF No. 201-9.
[51] *Id.*

- 4/10/19 email from Smed to an email group stating that "Falk will have absolutely the most compelling folding wall offering in the industry" and "will be using components from proven folding wall manufacturers and adapting them to our own criteria."[52]

- 5/20/19 email from Scott Wilcox at Interior Solutions to Mogens Smed about "a significant opportunity with a company called Mohave Narrows."[53] There is no information about what the "opportunity" is. Wilcox tells Smed "we may be able to help Falkbuilt with the Mojave Narrows opportunity until you get your Utah group set up."

- 7/17/2019 email from Henderson to Barrie Loberg at Falkbuilt, stating that Henderson recently put in his notice with DIRTT, that he is in Calgary, that he has a company set up with logistics in process, that "4 projects looking good after we launch" and that he "[c]ouldn't be more excited about what you and Mogens have put together!"[54]

- 7/23/19 email chain between Henderson and a Falkbuilt employee describing Henderson's efforts on various business startup logistics like insurance, phone, expenses, accounting, software, healthcare, etc.[55]

For purposes of this motion only, the court finds that the foregoing eleven emails selected by Plaintiffs from the Utah Defendants show or suggest the following. In the first half of 2019, Smed and Henderson are discussing and planning on Henderson starting a Falkbuilt affiliate in Utah. These discussions occur during a 5–6-month period before Henderson leaves DIRTT. Henderson has many business ideas which he shares with Smed during this period. Smed also shares an idea or strategy with Henderson and others in a group email. Smed likely came to Utah at least once, and Henderson went to Calgary at least twice. Henderson and others wanted Falkbuilt to manufacture in Utah, but the emails do not show that Smed accepted that suggestion or that Falkbuilt manufacturing occurred. By May 20, 2019, no Falkbuilt-related enterprise had

---

[52] Exhibit I, ECF No. 201-8.
[53] Exhibit L, ECF No. 201-11.
[54] Exhibit K, ECF No. 201-10.
[55] Exhibit C, ECF No. 201-2.

been established (third-party offer to Smed to handle business opportunity "until you get your Utah group set up"). By July 17, 2019, a Falkbuilt entity had been "set up" by Henderson, though it appears he still was a DIRTT employee at the time ("put my notice in last Friday"). It does not appear to have yet started actual client work, but the groundwork was being prepared ("4 projects looking good after we launch").

### C.  Plaintiffs' Interpretation of the Emails

Early in their motion, Plaintiffs highlight three snippets from the court's ruling which they allege the recently produced documents show "were not accurate"[56]:

> • "Any theft or misappropriation of DIRTT's confidential information initially occurred in Canada. So this factor favors applying Canadian law." (Dkt. 166 at 70:14-17);
>
> • The focal point for this litigation is Mr. Smed, who resides in Canada and has strong ties to Canada. (*Id.* at 71:18-24); and
>
> • "The parties' relationship *originated* and *ended up* . . . in Canada, and Mr. Smed resides there." (*Id.* at 72:1-4 (emphasis added)).[57]

Plaintiffs do not explain how the eleven emails show that those statements "were not accurate." The first statement—the initial misappropriation of DIRTT, Ltd.'s confidential information by Smed—is not addressed by the emails at all. To the limited extent that the emails touch upon the second and third statements, they support them. In short, the eleven emails that are the subject of this motion do nothing to undercut any of those statements. None of the emails

---

[56] Rule 60(b) Motion at 4.

[57] The ellipses in Plaintiffs' quote alter the meaning of the full quote. The ruling actually states that "the parties' relationship originated and ended up, both Falkbuilt, Ltd, and DIRTT, Ltd, have their headquarters in Canada, and Mr. Smed resides there." Transcript at 72:1-4, ECF No. 166. Elsewhere in the ruling, the court repeatedly notes that while the parties' relationship began in and is centered in Canada, and the initial alleged misconduct occurred there, the United States was involved as well. *See, e.g.*, Transcript at 67:21-22 ("The first amended complaint alleged or implies economic injury and market confusion in the US and in Canada"); *id.* at 69:9–10 ("The alleged injury occurred across borders."); *id.* at 70:12–14 ("Canada has the stronger claim to being the place where the conduct causing the injury occurred, even though that conduct crosses the border.").

address Smed's alleged initial theft of DIRTT's confidential information. None of the emails suggest that Smed does not reside in Canada, does not have strong ties there, and is not key to the parties' overarching litigation. And none of the emails suggest that the relationship between the DIRTT and Falkbuilt parties did not originate in Canada, or that DIRTT, Ltd. and Falkbuilt, Ltd. do not have their headquarters in Canada.

Plaintiffs' first discussion of any specific email, as opposed to general statements about the meaning of the emails generally and collectively, occurs in their argument regarding three of the Rule 60(b)(2) factors about (1) the evidence being newly discovered, (2) that Plaintiffs were diligent in seeking it, and (3) that the evidence was not cumulative or impeaching.[58] As noted earlier, the court assumes, without deciding, that these factors are met.[59]

Plaintiffs then turn to "factors four through six" arguing "the newly discovered evidence is not cumulative because it directly contradicts the Falkbuilt Defendants' assertion that "[o]ther than Mr. Henderson there's really no connection to Utah in this lawsuit."[60] The court notes that there is no factor six—the test has five factors.[61] Also, factors four and five are not, as Plaintiffs initially suggest, about "cumulative" evidence—factor three addresses whether the evidence is merely cumulative. Instead, the fourth and fifth factors are about materiality and whether the newly discovered material evidence would probably produce a different result.[62]

---

[58] Rule 60(b) Motion at 8–12.

[59] Plaintiffs argue in this section that the emails show "Falkbuilt's formation and operational presence in Utah since January 2019 . . . months before Henderson's theft of trade secrets." Rule 60(b) Motion at 9. As discussed *supra* at 6–8, the emails do not show that Falkbuilt was formed and operating in Utah in January 2019, but they do show that Henderson and Smed were preparing for that to occur and that a company was formed in or around July 2019. Henderson's alleged theft of DIRTT's trade secrets is a subject of the still pending case before this court and also is not discussed in the emails in question.

[60] Rule 60(b) Motion at 12.

[61] *See Zurich N. Am.*, 426 F.3d at 1290 (listing five factors).

[62] *Id.*

On the substance, Plaintiffs' focus on Falkbuilt's statement that "[o]ther than Mr. Henderson there's really no connection to Utah in this lawsuit" misses the mark.[63] That the prevailing party said it does not mean the court adopted it. Instead, the court found as follows:

> DIRTT has alleged market confusion and injury which transcend any single place. While Utah has some connection to this claim and certainly has connection to the claims against the Hendersons and Falk Mountain States, [by] contrast, Albertans are more connected to both sides for the many reasons previously stated. Moreover, DIRTT will still be able to proceed with its claims against the Henderson and Falk Mountain States, which are more directly tied to Utah.[64]

Next, after providing their summary of most of the emails,[65] Plaintiffs explain what they think they show. Plaintiffs claim that the emails show that "the parties' relationship was not localized within Canada as Falkbuilt originally represented, but included business strategy, finances and product testing in Utah, and that as part of the TTIMIT group national rollout, Utah was central to Falkbuilt's creation."[66]

Unpacking these claims, once again, the court notes that just because the prevailing party asserted something[67] does not mean that the court based its ruling on it. The court did not find that the parties' relationship was limited or "localized" within Canada. Instead, in evaluating the fourth Restatement Section 145 factor—the center of the parties' relationship—the court found that Canada had the better claim because the two parent companies are headquartered there,

---

[63] The broader argument in which counsel's quote appears is about what a Utah jury would think about why they were being called to decide a case where the two parent corporations are Canadian, whereas Albertans would understand why they were being called upon to decide the larger case. *See* Transcript at 15:19-25–16:1-13.

[64] Transcript at 75:18–25.

[65] Rule 60(b) Motion at 12–16.

[66] *Id.* at 16.

[67] Plaintiffs provide no cite to the record for this statement. The court will not address other examples of Plaintiffs asserting the court's adoption of Defendants' statements, other than to note that it happens multiple times in Plaintiffs' briefing. *See, e.g.*, Plaintiffs' Reply Brief in Support of Motion for Relief from Judgment Pursuant to Fed. R. Civ. Proc. 60(b) at 10 ("The Falkbuilt Defendants' counsel said it was much 'much ado about nothing,' and the Court agreed."). Plaintiffs' counsel is cautioned to use care that rhetorical flourish does not further undermine accuracy.

Smed, the former founder and CEO of one Canadian company and the founder and current CEO of the other, is a Canadian resident, and Smed also is alleged to have stolen alleged trade secrets owned by the Canadian company.[68]

Regarding "business strategy, finances[,] and product testing in Utah,"[69] the emails show the following. Henderson had lots of ideas he wanted to share with Smed. Smed offered brief replies to those emails. Smed also shared his own idea or strategy with an email group which included Henderson. Henderson, in support of one of Henderson's ideas, performed some kind of "beta test" he wanted Smed to know about. The email does not suggest that Smed asked for it; to the contrary, Henderson tells Smed "PLEASE read this idea" and "This is a good idea – Consider it!", strongly suggesting that both the idea and the test previously were unknown to Smed.[70] Plaintiffs' "finances" statement is an apparent reference to a pitch email from Tony Howells at Everlast Capital Partners. As noted earlier, Howells' email indicates that Smed showed "little interest" in Salt Lake City a week earlier, states that Smed may be "more receptive" now, but that Smed should let Howells know if "this is still a non-starter."[71] The fairest reading is that Howells is pitching Smed, not the other way around, and that Smed apparently is not much interested.

As noted earlier, the emails, taken together, certainly show that Henderson and Smed are anticipating that Henderson would join Falkbuilt at some point, all while Henderson was working for DIRTT, Inc. Both sides are sharing ideas and getting ready for the endeavor. This certainly will be relevant in the case still before the court involving the Hendersons and Falk Mountain States. But these emails do not establish that Falkbuilt and Smed are requesting or

---

[68] Transcript at 71–72, ECF No. 166.
[69] Rule 60(b) Motion at 16.
[70] ECF No. 201-4.
[71] ECF No. 201-3.

directing product testing in Utah, seeking financing, or executing any actual business operations at the time of the emails.

Regarding the claim that the emails show that "Utah was central to Falkbuilt's creation,"[72] the emails do not even reference Falkbuilt's "creation," much less contain any information showing that Utah was "central" to it. Additionally, Plaintiffs' filing in the Calgary court show that Falkbuilt's creation predates all of the emails in question.[73]

Plaintiffs then contend that the emails show that the "subsequent disclosure and use of DIRTT trade secrets—clearly commenced with Falkbuilt's plans of establishing a Utah presence and culminated with Falkbuilt's unlawful competition with DIRTT there, including Smed's personal presence there."[74] The emails do not do that. The emails say nothing about the taking or use of DIRTT's trade secrets, much less link any DIRTT trade secrets with establishing a Utah presence.

Plaintiffs also note that the emails show "Falkbuilt's and Smed's activities extended beyond Canada, involving Utah and other U.S. markets from the beginning of the Falkbuilt enterprise."[75] As already discussed, the *forum non conveniens* analysis recognized that the case was transnational, starting in Canada with Canadian parent companies and a common Canadian founder and then spilling over into the United States,[76] so that is not new. The claim that Utah was involved "from the beginning of the Falkbuilt enterprise" is not supported by the emails, which postdate Falkbuilt's founding.

---

[72] Rule 60(b) Motion at 16.

[73] Falkbuilt Ltd. was incorporated on October 26, 2018. Canadian Statement of Claim at ¶ 3, ECF No. 134-1; *see also* Canadian Amended Amended Amended Statement of Claim at ¶ 6, ECF NO. 207-3. The earliest email at issue here is three months later.

[74] *Id.* at 17 (footnote omitted).

[75] *Id.*

[76] *See supra* at 9 n.57; *infra* at 20.

Finally, Plaintiffs note that Henderson stated in an email that he has "4 projects looking good after we launch."[77] Once again, this is fair game in the action that still is pending before this court against Hendersons and Falk Mountain States.[78]

### D.  The *Forum Non Conveniens* Analysis

To analyze whether these emails would probably produce a different result, it is helpful to provide a summary of the court's analysis and reasoning in granting the dismissal based on *forum non conveniens*.[79]

"The doctrine of *forum non conveniens* permits a court to dismiss a case when an adequate alternative forum exists in a different judicial system and there is no mechanism by which the case may be transferred."[80] And "*forum non conveniens* is proper when an adequate alternative forum is available and public- and private-interest factors weigh in favor of dismissal."[81] The Supreme Court has stated that "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, [and] a foreign plaintiff's choice deserves less deference."[82]

Dismissal under *forum non conveniens* must meet two threshold requirements.[83] "First there must be an 'adequate alternative forum where the defendant is amenable to process.' Second, 'the court must confirm that foreign law is applicable,' because *forum non conveniens* is improper if foreign law is not applicable and domestic law controls."[84] And if both requirements

---

[77] Exhibit K, ECF No. 201-10.

[78] Plaintiffs make a number of other factual assertions, characterizations, and interpretations of the emails and facts in their briefing without citing any specific email or record evidence. Because those claims are made with no reference to any email or specific part of the record, they are not discussed further here.

[79] The entire opinion is located at ECF No. 166, 58–80 and ECF No. 164.

[80] *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1091 (10th Cir. 2019).

[81] *Kelvion*, 918 F.3d at 1091 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)).

[82] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

[83] *Archangel Diamond Corp. Liquidating Trust v. Lukoil*, 812 F.3d 799, 804 (10th Cir. 2016).

[84] *Archangel Diamond*, 812 F.3d at 804 (internal citations omitted).

14

are met, then "the court weighs the private and public interests to determine whether to dismiss."[85]

As to the first requirement, the court noted the similarities between the Canadian and United States actions.[86] Plaintiffs' pleadings in both actions "indicate that both courts may address the same alleged wrongful conduct and ultimately may grant substantive relief."[87] The court concluded that "[t]he Canadian court in which DIRTT, Ltd., has already filed a related lawsuit is an available and adequate forum for the claims against defendants Falkbuilt, Ltd.; Falkbuilt, Inc.; and Mr. Smed."[88]

As to the second threshold requirement, the court found that foreign law is applicable and domestic law does not control the claims against those three defendants.[89] Part of this analysis required the court to apply Utah's choice of law rules and the most significant relationship test from Section 145 of the Restatement Second of Conflict of Laws.[90] This test involves four factors: (1) "the place where the injury occurred;" (2) "the place where the conduct causing the injury occurred;" (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties;" and (4) "the place where the relationship, if any, between the parties is centered."[91]

First as to the place of injury, the court discussed that Plaintiffs allege that the Falkbuilt Defendants stole confidential information from a Canadian company, and the First Amended Complaint "does not explicitly limit the injury or damages sought to the United States and

---

[85] *Archangel Diamond*, 812 F.3d at 804.
[86] Transcript at 60–62, ECF No. 166.
[87] *Id.* at 62:17–19.
[88] *Id.* at 66:12–15.
[89] *Id.* at 66–72.
[90] *Id.* at 67.
[91] Restatement (Second) of Conflicts of Law: The General Principle § 145 (1971); *see also* Transcript at 67–72.

contains numerous statements that are broad regarding the damages and the injury."[92] The court also noted the confusion in the Amended Complaint referring to DIRTT, Ltd. and DIRTT, Inc. collectively.[93] Plaintiffs argued these entities are "totally separate" and "are operating on other sides of the border"[94] and yet they are continually referred to collectively.[95] Ultimately the court did not weigh the first factor in favor of applying Canadian law or domestic law as the injuries were "not limited to those two in those areas."[96]

Next, regarding the place where the conduct causing injury occurred, the court noted what was presented to the court, while involving the United States, "primarily point[ed] to Canada."[97] While additional conduct extended beyond Canada, Canada had the "stronger claim" because "any theft or misappropriation of DIRTT's confidential information initially occurred in Canada" and this favored applying Canadian law.[98] As to the third factor, the court looked at the domicile, residence, nationality, place of incorporation, and place of business of the parties.[99] Both businesses conduct business internationally. Both Falkbuilt, Ltd. and DIRTT, Ltd. are incorporated in Calgary, Alberta and have their headquarters and principal places of business in Calgary.[100]

In its analysis, the court further noted that if the case against the Falkbuilt Defendants moved to Canada, the case here could still proceed with the "narrow Utah focus" against the Hendersons and Falk Mountain States Defendants.[101] Furthermore, Smed is a citizen and resident

---

[92] Transcript at 67:13–15.
[93] *Id.* at 68.
[94] The issue of Plaintiffs' varying representations about DIRTT, Inc. is discussed *infra* at 21–25.
[95] Transcript at 68–69.
[96] *Id.* at 69:11–14.
[97] *Id.* at 69:24–25.
[98] *Id.* at 70:10–17.
[99] *Id.* at 70–71.
[100] *Id.* at 70–71.
[101] *Id.* at 71:14–17.

of Canada and is at the center of Plaintiffs' claims, "solidifying this factor in favor of applying

Canadian law."[102] As to the fourth factor, the court analyzed the place where the relationship

between the parties is centered.[103] The relationship between the two parent companies, DIRTT,

Ltd. and Falkbuilt, Ltd., as well as their common founder and leader, Mogens Smed, originated

in and continues in Canada.[104] Both DIRTT, Ltd. and Falkbuilt, Ltd. are Canadian companies,

and the fourth factor "supports the applicability of Canadian law."[105]

> The court then addressed the relevant private interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory
> process for compelling attendance of witnesses; (3) cost of obtaining attendance of
> willing non-party witnesses; (4) possibility of a view of the premises, if appropriate;
> and (5) all other practical problems that make trial of the case easy, expeditious,
> and inexpensive.[106]

> Applying these factors, the court noted that both Falkbuilt, Ltd. and DIRTT, Ltd.

have their principal places of business in Calgary.[107] Additionally, Plaintiffs have alleged

that over 50 employees have joined Falkbuilt and Smed.[108] Witnesses will be needed

from the parties' principal places of business in Canada.[109] Discovery can more easily be

obtained in Canada as to the Canadian defendants and any nonparty employees in the

United States can be compelled to produce documents or testify in Canada.[110] A review

of the premises would also be better suited in a Canadian forum.[111] And lastly, the

practical problems weighed in favor of dismissal because of "the parties' business

---

[102] *Id.* at 71:18–20.
[103] *Id.* at 71–72.
[104] *Id.* at 72.
[105] *Id.* at 72:11–13.
[106] *Archangel Diamond*, 812 F.3d at 806 (citation omitted).
[107] Transcript at 73:12–15.
[108] *Id.* at 73:16–18 (citing First Amended Complaint at ¶ 39).
[109] *Id.* at 73.
[110] *Id.* at 74.
[111] *Id.* at 74.

presence in Canada, their history there and misappropriation of confidential information in Canada, all of that certainly started there allegedly."[112] Most notably, the alleged wrongful conduct began in Canada and spread from there.[113] In all, the private interests firmly weighed in favor of dismissal.[114]

The court also considered the relevant public interest factors:

(1) administrative difficulties of the courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.[115]

The court noted the first factor "really doesn't play any role because there is insufficient information about comparative court congestion."[116] The second favor "somewhat" favored dismissal.[117] The court noted that Utah has a connection to the claims against the Hendersons and Falk Mountain States Defendants, but Albertans "are more connected to both sides [DIRTT, Ltd. and Falkbuilt, Ltd.] for the many reasons previously stated."[118] The claims against the Hendersons and Falk Mountain States were more directly tied to Utah, so that case would be able to proceed before the court.[119] As to the third factor, the court discussed that both companies conduct business internationally and "the interest in deciding the controversy is not entirely localized."[120]

---

[112] *Id.* at 74:20–23.

[113] *Id.* at 75.

[114] *Id.* at 75.

[115] *Archangel Diamond*, 812 F.3d at 808 (citation omitted).

[116] Transcript at 75:13–14. However, it must be noted that when DIRTT, Inc. was seeking a *forum non conveniens* dismissal of the Falkbuilt Defendants' counterclaim, it argued that U.S. federal courts are more congested than their Albertan counterparts. *See* ECF No. 63 at 13 n.1.

[117] *Id.* at 75:17.

[118] *Id.* at 75:19–23.

[119] *Id.* at 75.

[120] *Id.* at 76:4–5.

However, the court determined that Plaintiffs' allegations "primarily center around confidential information and trade secrets owned by a Canadian company," specifically DIRTT, Ltd.[121] While Plaintiffs allege dissemination of the confidential information, Alberta "has a much stronger local interest in the broad dispute between DIRTT and Falkbuilt."[122] Lastly, the fourth factor weighed most heavily in favor of dismissal.[123] The court determined that the alleged wrongdoing and relief between the Utah and Canadian actions is "substantially similar."[124] The trade secrets at issue are trade secrets owned by a Canadian company.[125] The Canadian action was initiated first, the Canadian court is "already familiar with the parent companies," and Canadian law is applicable to the claims alleged in the First Amended Complaint.[126]

The court summarized its conclusions:

> [T]his dispute primarily involves Canadian actors together with others and their alleged actions in Canada with additional actions and effects outside of Canada, including the United States and perhaps elsewhere. Mr. Smed is at the very center of this action. He is a Canadian citizen; he's a former executive of DIRTT, Ltd, the head executive in fact, which is DIRTT, Inc.'s parent company in Canada and is the founder of Falkbuilt in Canada. He gained information about DIRTT operations while employed in Canada. He left DIRTT and started Falkbuilt, Ltd, in Canada. DIRTT claims that Mr. Smed masterminded this theft of DIRTT's confidential information and engaged in other wrongdoing, such as luring away Canadian DIRTT employees and utilizing DIRTT's information to unfairly compete against DIRTT. While DIRTT and Falkbuilt have expanded their operations across the border into the US, the dispute originated in Canada when Mr. Smed left DIRTT, Ltd., in Canada.[127]

---

[121] *Id.* at 76; *see also id.* at 67 (noting that DIRTT, Ltd, is the owner of the trade secret information at issue and licenses to subsidiary or related company DIRTT, Inc.); Amended Complaint at ¶ 2 ("DIRTT Ltd. is the licensor of the trade secrets at issue in this case.").

[122] Transcript at 76:10–13.

[123] *Id.* at 76:17–18.

[124] *Id.* at 76:22–23.

[125] *Id.* at 76:24–25.

[126] *Id.* at 77:1–8.

[127] *Id.* at 77:16–78:7.

In contrast to interpreting the eleven emails in question, Plaintiffs spend very little time in their briefing analyzing the *forum non conveniens* factors. Plaintiffs assert that the "New Correspondence swings the first through the fourth Section 145 factors decidedly in DIRTT's favor."[128] This is not followed by any significant analysis of those factors and how they would probably have changed the court's Section 145 analysis.[129]

Plaintiffs then argue that the emails "materially impact[] the extent of local interest for a Utah court and potential jury" because Henderson had "at least four local projects ready for 'launch'," "Henderson reached out to at least 60 contacts," and the case involves "business wrongs in Utah resulting in injury and harm to a Utah business, and Utah played a significant role in a company's national rollout."[130]

Local interest and the burden of jury duty are two of the five public interest factors. Henderson and Falk Mountain States' alleged misconduct will be front and center in the case still pending before this court, including at trial. The claim that Henderson reached out to at least 60 contacts is not addressed by the eleven emails here. The argument that the case involves "harm to a Utah business" is not addressed by the emails or supported by the record: DIRTT, Ltd. was formed in Canada and has its principal place of business in Canada; DIRTT, Inc. was formed in Colorado and either has its principal place of business in Canada or in Georgia and Arizona, depending on which of Plaintiffs' filings are credited.[131] The contention that "Utah played a significant role in a

---

[128] Rule 60(b) Motion at 18.

[129] *Id.* at 18–19. It is preceded by Plaintiffs' argument about "physical acts of 'misappropriation'" and "subsequent disclosure and use of DIRTT trade secrets" but, as noted previously, the emails do not discuss Smed's or Henderson's alleged taking of DIRTT trade secrets or show how they used them.

[130] *Id.* at 18.

[131] *See infra* at 21–25.

company's national rollout"[132] is not demonstrated by the emails. Smed, a Canadian, and Falkbuilt, Ltd., a Canadian company, apparently are operating in various states, including Utah, through a network of affiliates (much like DIRTT, Ltd.), but that does not put Utah at the center of the dispute.

### E. The Mysterious Case of DIRTT, Inc.

Throughout the litigation between DIRTT and Falkbuilt, Plaintiffs have made various different representations about DIRTT, Inc.'s headquarters, principal place of business, and operations. Some of these statements conflict with each other.

On December 11, 2019, DIRTT, Inc., the only original plaintiff in this case, filed a Verified Complaint.[133] The Complaint alleged that DIRTT, Inc. is "a Colorado company, with its headquarters and principal place of business in Calgary, Alberta, Canada."[134] It further alleged that it "operates in Canada, the United States, and other jurisdictions around the world." [135] Nowhere in the Complaint is there any acknowledgement that DIRTT, Inc. has a parent company in Calgary, that the parent company is the owner of the trade secrets at issue, or that the parent company had previously filed related, ongoing litigation in Canada.

Attached to the Complaint was Defendant Henderson's employment offer with "DIRTT Environmental Solutions" with an address in Calgary, Alberta, Canada.[136] The letter is signed by Jason Robinson for "DIRTT Environmental Solutions, Inc."[137] Also attached as an exhibit to the

---

[132] Id.
[133] Verified Complaint, ECF No. 2.
[134] Id. at ¶ 1.
[135] Id. at ¶ 2.
[136] 05/21/2009 Letter at 1, ECF No. 2-1.
[137] Id. at 2.

Complaint was DIRTT, Inc.'s Regional Partner Agreement.[138] The address for DIRTT, Inc. is listed as Calgary, Alberta, Canada and is the same address as the offer of employment.[139]

On April 1, 2020, DIRTT, Inc., still the only plaintiff at the time, filed a motion to dismiss Falkbuilt's First Amended Counterclaim on the grounds of *forum non conveniens*.[140] In its motion, DIRTT, Inc. made numerous statements that it was located in Canada, conducts business in Canada, and had employees in Canada. For example, on the first page of the motion, DIRTT, Inc. argued that "both DIRTT and Falkbuilt are located in Canada."[141] Later, DIRTT, Inc. argued, "That alternate forum is Calgary, Alberta, Canada, where DIRTT is amenable to service of process."[142] On the same page, DIRTT, Inc. noted that "the likely sources of proof are located in Canada, as both DIRTT and Falkbuilt are headquartered and do business there, with critical witnesses and documents located in Canada."[143] On the next page, DIRTT, Inc. argued that "[d]ocuments relevant to the parties' arguments will be located on the companies' servers in those Canadian locations, and any physical documents or other evidence will also most likely be found in Canada…A number of Falkbuilt employees could foreseeably be called as witnesses, in addition to the Company's founder, Mogens Smed. DIRTT employees could also likely be called. All of these individuals reside and work in Canada."[144] The court granted Plaintiff's motion to dismiss so that the claim could be heard in Canada.[145]

---

[138] DIRTT Regional Partner Agreement, ECF No. 2-4.
[139] *Id.* at 1.
[140] DIRTT, Inc.'s Motion to Dismiss (DIRTT Motion to Dismiss), ECF No. 63, filed April 1, 2020.
[141] *Id.* at 1
[142] *Id.* at 11.
[143] *Id.* at 11.
[144] *Id.* at 12.
[145] *See* ECF Nos. 156, 157.

On October 20, 2020, DIRTT, Inc. filed a First Amended Complaint, adding DIRTT, Ltd. as a plaintiff.[146] There, Plaintiffs renewed their representation from their original Complaint that "DIRTT, Inc. is a Colorado company," but dropped the original Complaint's averment that DIRTT, Inc. had its "headquarters and principal place of business in Calgary, Alberta, Canada,"[147] alleging now instead that it had "principal places of business in Savannah, Georgia and Phoenix, Arizona."[148] On November 19, 2020, the Falkbuilt Defendants moved to dismiss the First Amended Complaint.[149]

On December 17, 2020, Plaintiffs opposed the Falkbuilt Defendants' motion to dismiss.[150] In that pleading, Plaintiffs argued that DIRTT, Inc. is a "Colorado company operating in the U.S."[151] It also alleged that "DIRTT, Inc. is a U.S. plaintiff."[152] And, Plaintiffs argued that "DIRTT, Inc. only operates in the U.S. and has no factory in Canada."[153]

On May 19, 2021, the court held a hearing on the Falkbuilt Defendants' motion to dismiss.[154] At the hearing, Plaintiffs' counsel made various statements regarding DIRTT, Inc.'s status. He stated that "DIRTT, Inc. is only operating in the US. It has no employees outside of the US. It has no sales outside of the US. It has a US incorporation."[155] He stated there was "no overlap" between DIRTT, Inc. and DIRTT, Ltd,[156] DIRTT, Inc. is a "US only company" and

---

[146] First Amended Complaint, ECF No. 117, filed October 20, 2020.
[147] Verified Complaint at ¶ 1.
[148] First Amended Complaint at ¶ 1.
[149] Motion to Dismiss, ECF No. 134.
[150] Plaintiffs' Opposition to Motion to Dismiss First Amended Complaint as to Falkbuilt, Ltd., Falkbuilt, Inc., and Mogens Smed (Plaintiffs' Opposition), EF No. 139, filed December 17, 2020.
[151] Plaintiffs' Opposition at 5.
[152] Plaintiffs' Opposition at 17.
[153] *Id.* at 22.
[154] *See* Transcript of Motion to Dismiss Hearing, ECF No. 166.
[155] *Id.* at 17:22–24.
[156] *Id.* at 18:2–3.

does not operate in Canada.[157] Later, counsel again reaffirmed that DIRTT, Inc. is a "US

company that operates only in the US."[158] Plaintiffs' counsel also represented that DIRTT, Ltd.

does not "operate at all in the US" and "there are no allegations of DIRTT, Ltd. doing anything

in the United States."[159] Lastly, counsel made clear that "DIRTT, Inc. does no business in

Canada. That's done for tax reasons. It's a very strict line. There's no blending between the

two."[160]

On September 30, 2021, the Falkbuilt Defendants filed an opposition to Plaintiffs' Rule

60(b) motion.[161] Attached to the opposition was a Consent Order from the Canadian action,

permitting the plaintiff in that action, DIRTT, Ltd., to file an Amended Amended Amended

Statement of Claim.[162] The Amended Amended Amended Statement of Claim added DIRTT,

Inc. as a plaintiff in the Canadian action.[163] DIRTT, Inc. is listed as "an affiliate of DIRTT, Ltd.

incorporated under the laws of the States of Colorado, with its principal offices located in

Calgary, Alberta,"[164] not Georgia or Arizona.

In summary, Plaintiffs have made varying representations over the course of this

litigation about DIRTT, Inc. Originally, DIRTT, Inc. told the court that its headquarters

and principal place of business were in Calgary. DIRTT, Inc. also said that operates in

Canada, the United States, and other jurisdictions around the world. Similarly, in support

---

[157] *Id.* at 18:4–8.

[158] *Id.* at 29:11–12; *see also id.* at 30:3–4 ("[T]he only way we can protect those trade secrets which are in the US where the company only operates."); *id.* at 30:16 ("We've alleged very clearly that there are third parties in the US that are critical to this dispute and that we need injunctive relief to protect our US-only business.").

[159] *Id.* at 34:13–14, 17–18.

[160] *Id.* at 38:2–4.

[161] Opposition to Motion for Relief from Judgment Pursuant to Fed. R. Civ. Proc. 60(b), ECF No. 207, filed September 30, 2021.

[162] 08/31/21 Consent Order, ECF No. 207-3.

[163] *Id.* at 1; Amended Amended Amended Statement of Claim at ¶ 2.

[164] Amended Amended Amended Statement of Claim at ¶ 2.

of its effort to dismiss a counterclaim against it, DIRTT, Inc. made numerous statements about how it and Falkbuilt do business in Canada, are "located" and "headquartered" there, and about the critical witnesses and documents that would be found there. Several months after DIRTT, Inc.'s *forum non conveniens* motion was fully briefed, Plaintiffs filed an Amended Complaint changing DIRTT, Inc's principal place of business from Calgary to Arizona and Georgia. At the hearing on the Falkbuilt Defendants' *forum non conveniens* motion, Plaintiffs' counsel said that there is "no overlap" and "no blending" between DIRTT, Ltd. and DIRTT, Inc. "for tax purposes." Counsel also said that DIRTT, Inc. is a "US only company." Yet despite all this, the most recent filing in the Calgary court states DIRTT, Inc. has "its principal offices located in Calgary, Alberta."

Whatever the reality actually is, and however Plaintiffs have chosen to organize themselves for tax or other purposes, Plaintiffs' filings and representations regarding DIRTT, Inc. have been many and varied. And some of them seem to have varied based on whether DIRTT is seeking a *forum non conveniens* order or defending against one.

. . . .

Based on all of the foregoing, Plaintiffs have failed to meet the Rule 60(b)(2) standard. The emails they cite add little to the court's previous analysis that the relevant factors weigh in favor of the Falkbuilt Defendants being dismissed in favor of the first-filed case in Calgary. To prevail on its 60(b)(2) motion, Plaintiffs needed to show that the newly discovered emails would probably have changed the *forum non conveniens* result. These eleven emails would not have produced a different result. Also, the numerous conflicting representations Plaintiffs have made about DIRTT, Inc., while not key to the

court's analysis, are not helpful. Accordingly, Plaintiffs have not met their burden under Rule 60(b)(2).

## II. Plaintiffs Have Not Satisfied the Rule 60(b)(6) Standard.

Rule 60(b)(6) relief is "available only in 'extraordinary circumstances'"[165] and "only when necessary to accomplish justice."[166] "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'"[167]

Plaintiffs first argue the "plain inequity of forcing a U.S. company to seek redress for misconduct and harm that demonstrably occurred within this forum against a local competitor in a foreign, inconvenient forum."[168] This is not the case. Plaintiffs still have a suit before this court against the "local competitors" (Falk Mountain States and the Hendersons) for the local injury. The court's *forum non conveniens* order simply has sent the broader suit back to Calgary—the place where the overlapping case was first filed; the place where both parent companies are incorporated and have their headquarters and principal places of business; the place where their common founder and leader resides; and the place where this cross-border dispute has its origins. That one of the Plaintiffs, the subsidiary, was legally incorporated in a neighboring state and does business here certainly is relevant to the *forum non conveniens* analysis, but it is not dispositive, especially when it has made numerous conflicting representations to this court and the Calgary court about its presence in and ties to Canada. Plaintiffs can hardly claim that

---

[165] *Buck v. Davis*, --- U.S. ---, 137 S.Ct. 759, 777 (2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524 (2005)).

[166] *United States v. Elwood*, 757 Fed. App'x 731, 734 (10th Cir. 2018) (quoting *Cashner v. Freedom Stores*, 98 F.3d 572, 579 (10th Cir. 1996)).

[167] *Id.* at 778 (citation omitted).

[168] Rule 60(b)Motion at 19, ECF No. 201.

Calgary is truly foreign or inconvenient for them. There is no equitable argument on this point that justifies relief under Rule 60(b)(6).

Plaintiffs also argue that because the Falkbuilt Defendants have "blocked enforcement" of the Canadian injunction in the United States this court should grant relief under Rule 60(b)(6).[169] The injunction referenced is one which the Plaintiffs and Defendants jointly prepared. Plaintiffs state that the Falkbuilt Defendants have "refused to consent to enforcement of such an order" in a recently-filed Texas action.[170] Plaintiffs' complaint seems to be that the Falkbuilt Defendants did not voluntarily enter the injunction in Texas even though the Falkbuilt Defendants aver that they are bound by and operating under the terms of the injunction in the Canadian action.[171] And Plaintiffs have not made any allegations, much less provided any evidence, that the Falkbuilt Defendants have violated the injunction either in Canada or in the United States. Plaintiffs provide no case law suggesting that their desire to have the stipulated protective order entered in another court warrants relief under Rule 60(b)(6). On the facts of this case, it does not.

In sum, none of these issues support the "extraordinary circumstances" required under Rule 60(b)(6). As the court detailed in its ruling on the *forum non conveniens* dismissal, Plaintiffs have an adequate remedy against the Falkbuilt Defendants in the Canadian action. While this case has an unusual posture and some of its handling has been curious, this does not amount to grounds to undo the dismissal of the overarching case in favor of Canada.

## CONCLUSION

---

[169] *Id.* at 20.
[170] *Id.* at 21.
[171] Opposition at 12–13; *see also* Exhibits 5, 6, 8, ECF Nos. 207-5, 207-6, 207-8.

This case was destined to have some complexity in its handling. When the founder and CEO of one company leaves and founds a competitor company, questions regarding the taking and use of trade secrets or other confidential information often arise. The stakes are high for both sides. In this case, Mogens Smed, a Calgary resident, was a founder and longtime CEO of one Calgary company, which he left in favor of founding his own Calgary company. His former Calgary company accused him of taking with him and using its trade secrets, pilfering employees, and unfairly competing against his former company. It filed suit over it and related conduct in Calgary. The alleged misconduct and injury did not stop at the Canadian border, since these two Calgary companies both have subsidiaries or affiliates through which they operate in the United States and other countries. Seven months after filing in Calgary, DIRTT decided to open a second front in their litigation by filing a case in Utah against Smed and his companies, as well as two Utah residents and their Falkbuilt-affiliated company. DIRTT then filed a successful *forum non conveniens* motion against the Falkbuilt Defendants' counterclaim, sending it back to Canada, where all of this began. And so, the *forum non conveniens* seeds were sown and sprouted.

In a *forum non conveniens* analysis, the court is tasked with deciding where trial would be most convenient, whether there is an adequate alternative forum, whether foreign law is applicable, and what the private and public interest factors suggest. Because this case involved both Canada and the United States, it is understandable why the issue was hotly disputed. But, at bottom, the beginnings of this case are in Calgary, the parent companies are Canadian, and so is the parent companies' common founder and leader. And the trade secrets at the core of this case are owned by the Canadian Plaintiff. So, while there are various other important actors, conduct, and injury involving the United States, Canada has the better claim to the larger dispute.

The DIRTT entities obviously feel very strongly about litigating their claims against the Falkbuilt entities in multiple courts at the same time. This has been demonstrated both in the number and tenor of their multiple filings and in their aggressive characterizations and statements. But, on the facts of this case, covering much of the same underlying conduct in two or three different courts will serve primarily to greatly increase litigation expenses. However, while Plaintiffs' 60(b) motion does not have merit and must be denied, the court recognizes that if the Calgary court unexpectedly and categorically denies discovery into Smed and Falkbuilt's Utah activities, then such discovery in the still pending suit before this court would be warranted. And if any such discovery were to reveal grounds for liability for which Canadian law and the Calgary court could offer no relief, the question of whether Falkbuilt, Ltd. and Inc., as well as Mogens Smed, need to be added back to the case pending before this court then would be live. But that future contingency has not arisen. This court has every confidence that the Calgary court is fully capable of handling the bulk of this cross-border dispute in the first-filed case before it. Should assistance be needed in enforcing the Calgary court's orders or judgments, this court stands ready to assist.

## ORDER

For the reasons stated in this Memorandum Decision and Order, Plaintiffs' motion for Rule 60(b) relief is DENIED.


Signed December 14, 2021.

BY THE COURT


_____
David Barlow
United States District Judge

29