IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DIRTT ENVIRONMENTAL SOLUTIONS, INC., DIRTT ENVIRONMENTAL SOLUTIONS LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>LANCE HENDERSON, KRISTY HENDERSON, FALKBUILT, INC., FALKBUILT LTD., MOGENS SMED, FALK MOUNTAIN STATES, LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS**<br><br>Case No. 1:19-cv-00144-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

Plaintiffs DIRTT Environmental Solutions, Inc. ("DIRTT Inc.") and DIRTT Environmental Solutions Limited ("DIRTT Ltd.") (collectively, "Plaintiffs" or "DIRTT") filed this action in the District of Utah, asserting claims relating to state and federal trade secrets, consumer protection, deceptive practices, and contract law, unjust enrichment, and tortious interference. Before the court is a motion to dismiss for forum non conveniens filed by Defendants Lance Henderson, Kristy Henderson, Falkbuilt Inc., Falkbuilt Ltd., Mogens Smed, and Falk Mountain States, LLC (collectively, "Defendants"). ECF No. 255 ("Defs.' Mot."). The court has reviewed the supporting and opposing memoranda filed by the parties, as well as the notices of supplemental authority and any responses. ECF Nos. 255, 267, 282, 318, 322, 329, 334, 335, 337, 338, 339.

For reasons set forth herein, Defendants' motion to dismiss is GRANTED. The court dismisses this action WITHOUT PREJUDICE.

## BACKGROUND

DIRTT Ltd. is a Canadian company incorporated in Alberta and headquartered in Calgary, Alberta, Canada. DIRTT Ltd. owns the trade secret information at issue in this case and licenses it to its wholly owned subsidiary, DIRTT Inc. DIRTT Inc. is a Colorado company headquartered in Calgary with its principal place of business in Savannah, Georgia. Mogens Smed, a resident of Calgary, co-founded DIRTT in 2004. He served as CEO of DIRTT Ltd. and DIRTT Inc. until he was ousted in 2018. After his termination, Smed established Falkbuilt Ltd., a Canadian company, and its subsidiary, Falkbuilt Inc., a Delaware corporation. Both Falkbuilt Ltd. and Falkbuilt Inc. (collectively, "Falkbuilt") established their headquarters and principal places of business in Alberta, Canada.

In 2019, Plaintiffs filed claims against Falkbuilt Ltd., Smed, and another former DIRTT employee, Barrie Loberg, in the Court of Queen's (now King's) Bench of Alberta. Seven months later, Plaintiffs initiated this action in the District of Utah against Falkbuilt Ltd., Falkbuilt Inc., Falk Mountain States, LLC, Smed, and another former DIRTT employee, Lance Henderson, and his wife, Kristy Henderson. Defendants Falkbuilt Ltd., Falkbuilt Inc., and Smed (the "Falkbuilt Defendants") moved to dismiss the Complaint for forum non conveniens. The Hendersons, who are domiciled in Utah, and Falk Mountain States, LLC, Falkbuilt's Utah affiliate (collectively, the "Utah Defendants"), did not join the motion.

Initially, Judge Barlow, to whom this case was then assigned, granted the Falkbuilt Defendants' motion, thus allowing the case to proceed solely against the Utah Defendants. ECF No. 164. However, the Tenth Circuit reversed, holding that "a district court clearly abuses its discretion when, as here, it elects to dismiss an action as to several defendants under a theory of forum non conveniens while simultaneously allowing the same action to proceed against other

2

defendants." *DIRTT Env't Sols., Inc. v. Falkbuilt Ltd.*, 65 F.4th 547, 549 (10th Cir. 2023). Following the Tenth Circuit's order, the case was reassigned to the under-signed. Now, all Defendants move for dismissal under a theory of forum non conveniens and consent to the Canadian court's jurisdiction.

The operative complaint before the court is Plaintiffs' Second Amended Complaint ("the Complaint"). ECF No. 240-1 ("Pls.' Compl."). Plaintiffs allege violations of state and federal trade secrets, consumer protection, deceptive practices, and contract law, unjust enrichment, and tortious interference. The Complaint centers on the actions of Smed, who, since his departure from DIRTT in 2018, acted in concert with other former DIRTT employees to engage "in an ongoing attempt to replicate the business of DIRTT, Inc. and DIRTT Ltd., steal DIRTT, Inc.'s partners and end-user customers, and co-opt DIRTT, Inc.'s product characteristics and business reputation as Falkbuilt's own, through improper means . . . ." Pls.' Compl. ¶ 35. Plaintiffs accuse Smed of recruiting DIRTT employees to work for Falkbuilt to compete with DIRTT in the U.S. marketplace.

The Second Amended Complaint specifically names Lance Henderson, a resident of Utah, as one individual who conspired to steal DIRTT trade secrets to benefit Falkbuilt by uploading confidential information onto his personal cloud-based storage before his departure from DIRTT. It also claims that Falkbuilt falsely marketed its products in the United States as comparable to DIRTT's products and gained an unfair advantage by using proprietary information allegedly stolen by former DIRTT employees.

## LEGAL STANDARD

The court has discretion to dismiss a complaint for forum non conveniens "even if jurisdiction and proper venue are established." *American Dredging Co. v. Miller*, 510 U.S. 443,

448 (1994). Unlike motions to dismiss for improper venue, "there is generally no time limit on when a motion to dismiss for forum non conveniens must be made." *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173 (10th Cir. 2009) (internal quotation marks omitted).

In determining whether to dismiss a complaint for forum non conveniens, the court asks two threshold questions. *Unitednet Ltd. v. Tata Commc'ns Am., Inc.*, 112 F.4th 1259 (10th Cir. 2024). First, "there must be an adequate alternative forum where the defendant is amenable to process." *Archangel Diamond Corp. Liquidating Trust v. OAO Lukoil*, 812 F.3d 799, 804 (10th Cir. 2016) (internal quotation marks omitted). Second, foreign law must be applicable and predominate the lawsuit. *Id.* ("[F]orum non conveniens is improper if foreign law is not applicable and domestic law controls.") If both threshold questions are met, only then does the court weigh private and public interests to determine whether dismissal is appropriate. *Id.*

A court will typically give a plaintiff's choice of forum substantial deference "because it is reasonable to assume that this choice is convenient for the plaintiff." *Unitednet*, 112 F.4th at 1265. But this assumption is less justifiable when the plaintiff is a foreign party. *Id.* at 1266. Thus, "a foreign plaintiff's forum choice deserves less deference." *Id.*

## ANALYSIS

At the outset, the court will consider Plaintiffs' two arguments against addressing the merits of Defendants' motion. First, Plaintiffs argue that compliance with the Tenth Circuit's mandate requires the court to exercise jurisdiction over this case, thus necessitating denial of Defendants' motion. Second, Plaintiffs argue that Defendants' motion to dismiss for forum non conveniens is untimely. Finding Defendants' motion timely and concluding that the Tenth Circuit mandate does not require dismissal, the court then proceeds to consider the motion's substance.

The court's forum non conveniens analysis begins with two threshold questions. The court firsts asks whether the Canadian court is an adequate alternative forum. The court then considers whether foreign law applies and predominates the dispute. Finding this lawsuit meets both threshold questions, the court finally balances the private and public interest factors.

I.  THE TENTH CIRCUIT MANDATE DOES NOT NECESSITATE DENIAL

Plaintiffs argue that the Tenth Circuit's opinion requires denial of Defendants' motion because the Tenth Circuit remanded the case "with instructions for the district court to exercise jurisdiction over the entirety of [DIRTT's] action." ECF No. 267 ("Pls.' Opp.") at 7 (quoting DIRTT, 65 F.4th at 555). But Plaintiffs misinterpret the Tenth Circuit's mandate. In the context of the opinion, the Tenth Circuit's instruction to "exercise jurisdiction over the entirety of [DIRTT's] action" relates to the district court's earlier decision to bifurcate the action against the Falkbuilt Defendants and the Utah Defendants. This, the Tenth Circuit held, was an abuse of discretion because "forum non conveniens is not available as a tool to split or bifurcate cases." DIRTT, 65 F.4th at 555. However, the Tenth Circuit's opinion does not preclude the district court's ability to consider a motion to dismiss for forum non conveniens. It only bars the district court from considering such a motion filed by fewer than all of the Defendants, thus bifurcating the case. Plaintiff argues that "[t]he addition of the Henderson Defendants [in moving for dismissal for forum non conveniens] does nothing to change the Tenth Circuit's mandate." Id. at 9. But it does just the opposite. The fact that all Defendants have now joined in the motion to dismiss aligns their motion with the Tenth Circuit's holding. Thus, the court concludes that the Tenth Circuit's mandate does not necessitate denial of Defendants' motion.

II.  DEFENDANTS' MOTION IS TIMELY

Plaintiffs next argue that Defendants' motion to dismiss for forum non conveniens is untimely. But "forum non conveniens is a discretionary doctrine which is not waived by a party's failure to raise it in an initial responsive pleading." *Yavuz*, 576 F.3d at 1173. Indeed, there is generally no time limit to raise a forum non conveniences issue. *See id.* Still, Plaintiffs argue that the court should deny Defendants' motion because it is only "an improper and belated attempt to circumvent the Tenth Circuit's mandate and further delay the case." Pls.' Opp. at 10.

But there is no evidence in the record to suggest such gamesmanship. Defendants raised the issue of forum non conveniens at the beginning of this lawsuit. And they filed another motion to dismiss joined by all Defendants less than a year after the Tenth Circuit's reversal and less than five months after being notified of the Supreme Court's denial of their petition for writ of certiorari. Rather, this instant motion is an attempt by Defendants to rectify the mistake made in their previous motion and align with the Tenth Circuit's mandate.

Plaintiffs argue that Defendants do not offer any new law or facts to support the Utah Defendants' decision to join the motion at this point in the litigation. But there is new law motivating this instant motion—the Tenth Circuit's mandate clarifying that the forum non conveniens doctrine cannot be used to bifurcate a case. With this holding in mind, the Utah Defendants made the legitimate choice to submit to the jurisdiction of the Canadian courts and join the Falkbuilt Defendants' motion to dismiss the case for forum non conveniens in Utah. Thus, new law and facts exist that make the consideration of this motion different from Defendants' previous motion. This is not a case in which Defendants unreasonably failed to raise the issue of forum non conveniens after they "[knew] or could have reasonably known the facts or circumstances serving as the basis for such a motion." *Yavuz*, 576 F.3d at 1174. Therefore, the court finds Defendants' motion is timely. It therefore turns to Defendants' motion to dismiss for forum non conveniens,

beginning with the two threshold questions: (1) whether Canada is an adequate alternative forum, and (2) whether foreign law predominates the dispute.

III. CANADA IS AN ADEQUATE ALTERNATIVE FORUM

Whether an adequate alternative forum exists depends on whether the alternative forum is "adequate" and "available." *See Lukoil*, 812 F.3d at 804; *see also Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998). "The availability requirement is usually satisfied . . . where the defendants concede to be amenable to process in the alternative forum." *Yavuz*, 576 F.3d at 1174; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22. Here, all Defendants concede to the Canadian court's jurisdiction. Thus, Canada is an available forum.

But Plaintiffs contend that Canada is not an adequate forum because the Canadian court cannot enforce an injunction in the United States. While the remedy provided by an alternative venue "need not be the same as that provided by the American court," it cannot be "so clearly inadequate . . . that it is no remedy at all." *Yavuz*, 576 F.3d at 1174 (internal quotation marks omitted).

Plaintiffs cite *Medellin v. Texas* in claiming United States courts will not enforce an injunction issued by the Canadian court. *See* 552 U.S. 491, 522 (2008) ("The general rule . . . is that judgments of foreign courts awarding injunctive relief, even as to private parties, let alone sovereign States, are not generally entitled to enforcement."). *Medellin* held that the judgment of a foreign court, the International Court of Justice, did not create binding domestic law. Thus, any injunction issued by a foreign court would not necessarily be binding on a domestic court in the United States.

But *Medellin* differs from this case in two material ways. First, *Medellin* concerned conflicting state and foreign interests. To comply with the International Court's injunction, Texas

7

faced overturning 51 state court convictions and death sentences for failing to procedurally comply with the Vienna Convention. *See id.* at 498. In contrast, enforcement of an injunction issued by a Canadian court would likely not interfere with any state interests. Second, the holding in *Medellin* turned on the reading of an international treaty and whether that treaty was self-executing. *See id.* at 504-05. Determining that issue required the Supreme Court to consider principles of separation of powers between the executive and legislative branches of government. This is clearly not at issue in this litigation. In short, enforcing a Canadian court's injunction would not present the conflicting interests or constitutional implications navigated in *Medellin*.

In fact, United States courts routinely enforce Canadian judgments under principles of comity. *See Smith v. Toronto-Dominion Bank*, 1999 U.S.App.LEXIS 1184, at *7 (10th Cir. 1999) (compiling cases to conclude domestic courts have a "long history of . . . recognizing Canadian judgments under principles of comity."). And the Fourth Restatement of Foreign Relations Law asserts "a final and conclusive judgment of a court of a foreign state in an action seeking an injunction or a comparable nonmonetary remedy is entitled to recognition by courts in the United States." RESTATEMENT (FOURTH) OF FOREIGN REL. L. OF THE U.S. § 488 (AM. L. INST. 2019).

This presumption of recognition may only be disregarded if the injunction falls into one of the mandatory or discretionary grounds for nonrecognition. *See id.* §§ 483, 484 (AM. L. INST. 2019). For example, "[a] court in the United States will not recognize a judgment of a court of a foreign state if . . . the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with fundamental principles of fairness," the foreign court lacks jurisdiction, or the laws of the United States prevent recognition. *Id.* But none of the grounds for nonrecognition apply here. An injunction issued by the Court of the King's Bench of Alberta would therefore be entitled to recognition in the United States. Further, in listing

discretionary grounds for nonrecognition, the Fourth Restatement reiterates "[a] court in the United States need not recognize a judgment of a court of a foreign state if . . . the judgment conflicts with another final and conclusive judgment." *Id.* § 484. Consolidating this case before a Canadian court will prevent the possibility of conflicting judgments from different legal systems. Thus, the court concludes that Canada is an adequate alternative forum.[1]

In reversing this court's previous ruling, the Tenth Circuit held that Canada was not an adequate alternative forum because "[t]he Utah based defendants . . . are not subject to Canadian jurisdiction and neither consented to that jurisdiction nor joined the Canadian defendants' motion to dismiss for forum non conveniens." *DIRTT*, 65 F.4th at 555. This is no longer the case. All Defendants have joined in this motion and now consent to jurisdiction by the Canadian court. Therefore, the Tenth Circuit's holding on that narrow issue no longer applies.

### IV. CANADIAN LAW PREDOMINATES THE DISPUTE

Next, the court turns to whether foreign law applies to this dispute. Plaintiffs argue that U.S. law applies because seven of the ten claims asserted in the Complaint are U.S. statutory claims. Pls.' Opp. at 20. But the Tenth Circuit has emphasized that the fact that "some of the claims are based on U.S. law and some are based on foreign law" does not "foreclose consideration of forum non conveniens . . . . To do otherwise would allow a party to avoid a forum non conveniens dismissal simply by including a claim based upon a domestic statute." *Lukoil*, 812 F.3d at 806. In fact, even if Plaintiffs alleged all claims under domestic statutes, that does not preclude the

---

[1] The parties argued extensively about whether the claims before this court may be consolidated in the pending Canadian action. But whether the claims here could be added to the pending Canadian litigation is irrelevant to the adequate alternative forum analysis. Even if the claims could not be added, Canada would still be an adequate alternative forum for an independent suit.

9

application of foreign law to those claims. The court must still conduct a choice of law analysis to determine what law governs this dispute. A contrary holding would allow plaintiffs to avoid dismissal for forum non conveniens by simply alleging claims under domestic statutes. But courts are required to consider the overall nature of the claims and apply the forum's choice of law rules to determine the outcome of the dispute. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495-96 (1941).

Four of the ten claims alleged in Plaintiffs' Second Amended Complaint fall under state or federal trade secrets statutes. And misappropriation of trade secrets is the action that anchors this dispute. Plaintiffs allege that "Defendants have conspired to misappropriate a large number of . . . DIRTT trade secrets. Plaintiffs are aware of, for example, DIRTT pricing information, design documents, client specific project documents, and other trade secrets that were misappropriated." Pls.' Compl. ¶ 146. Courts recognize that "[t]he claim of misappropriation of trade secrets and confidential information essentially sound in tort." *Multimedia Games, Inc. v. WLGC Acquisiiton Corp.*, 214 F.Supp.2d 1131, 1142 (N. D. Okla. 2001); *Eaton Corp. v. Appliance Valves Co.*, 634 F. Supp. 974, 982 (N.D. Ind. 1984), *Auto Channel Inc. v. SpeedVision Network, LLC*, 995 F. Supp. 761 (W.D. Ky. 1997), *Aktiebolaget Bofors v. United States*, 194 F.2d 145 (D.C. Cir. 1951). In addition to misappropriation of trade secrets, the Second Amended Complaint also alleges common law tort actions for unjust enrichment and tortious interference.

Because the tort actions predominate the lawsuit, the court will begin its choice of law analysis with Plaintiffs' tort claims. In determining which law to apply in a tort action, Utah courts "apply the most significant relationship approach as described in the Restatement (Second) of Conflict of Laws . . . ." *Volonte v. Domo, Inc.*, 528 P.3d 327, 346 (Utah Ct. App. 2023). This approach requires the court to consider four factors: "(a) the place where the injury occurred, (b)

10

the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF L. § 145 (AM. L. INST. 1977).

As to the first factor, the injury occurred in both the United States and Canada. Plaintiffs present their complaint as mainly concerning injury to the U.S. entity, DIRTT Inc. But even Plaintiffs admit that the Canadian entity, DIRTT Ltd., owns the trade secrets in dispute and "directly benefits from every DIRTT Inc. sale in the U.S." Pls.' Compl. ¶ 15. If DIRTT Ltd. directly benefits from every DIRTT Inc. sale, surely any injury from theft of trade secrets owned by DIRTT Ltd., whether the theft occurred in Canada or abroad, will result in injury to DIRTT Ltd. Thus, the first factor is neutral and weighs neither in favor of, nor against, Defendants' motion. The injury appears to equally affect both American and Canadian DIRTT corporations.

Second, the alleged actions resulting in harm were taken by employees of both Canadian and U.S. corporate parties in the United States and Canada. But the basis for the entire dispute stems from the actions of Smed when he allegedly conspired to steal trade secrets from DIRTT to establish a competing enterprise. Smed initiated these actions in Canada when DIRTT terminated Smed's employment in 2018, and later spread his scheme throughout the United States and abroad. Although Smed recruited U.S. based employees such as the Hendersons, the hub of his entire alleged conspiracy began in Calgary where he resides and worked for Plaintiffs. Further, Smed continued to live in Calgary as he recruited DIRTT employees, both in the United States and Canada, to work for his competing company, Falkbuilt.

Plaintiffs' complaint specifically mentions two U.S. based former employees, including Lance Henderson. But Lance Henderson, the only former employee besides Smed who is a named

defendant, admits that the data downloads in which Plaintiffs accuse him of stealing trade secrets took place at DIRTT's headquarters in Calgary. ECF No. 255-2 ("Lance Henderson Decl.") at 3. Even though Plaintiffs attempt to cabin their complaint to injuries occurring in the United States by former employees located in the United States, their claims are so bound up in the overall dispute, which originated in Canada, that it is impossible to narrow the conduct or injury as such. And the employee that provides the Complaint's greatest connection to Utah, Lance Henderson, admits that the genesis of the conduct causing injury occurred in Canada. Thus, the second factor weighs in favor of Defendants' motion.

Finally, the third and fourth factors also weigh heavily in favor of applying Canadian law. Although some employees are located throughout the United States, the corporate parties and their employees largely reside in Canada. DIRTT Ltd., Falkbuilt Ltd., and Falkbuilt Inc. all share Canadian headquarters and principal places of business. Even though DIRTT Inc. is a Colorado company with its principal place of business in Savannah, Georgia, it is also headquartered in Canada. Because three of the four corporate entities claim their principal place of business in Canada, the third factor weighs heavily in favor of a Canadian forum. *See* RESTATEMENT (SECOND) OF CONFLICT OF L. § 145 cmt. e (AM. L. INST. 1977) ("If the interest is a business or financial one . . . the place of business is the more important contact . . . than the place of incorporation . . . ."). Certainly, the Hendersons are domiciled in Utah. But they have consented to the jurisdiction of the Canadian courts and the majority of the corporate parties' employees reside in Canada. Further, the relationship between DIRTT and Falkbuilt is undoubtedly centered in Canada. Smed, whose conduct is at the center of the dispute, resides in Calgary. And Smed initiated the conduct outlined in the Complaint when he left DIRTT Ltd. in Canada and established Falkbuilt Ltd. and Falkbuilt

Inc. The relationship among all parties to the dispute stems from Smed's actions, which took place in Canada. Thus, the third and fourth factors weigh in favor of Defendants' motion.

With respect to Plaintiffs' contract claim against Lance Henderson, the choice of law analysis is similar. Utah courts adopt the "most significant relationship" test as outlined in the Second Restatement of Conflict of Law § 188. *See Rocky Mt. Builders Supply Inc. v. Marks*, 392 P.3d 981, 983 n.2 (Utah Ct. App. 2017). The test denotes five factors: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF L. § 188 (AM. L. INST. 1977).

Because Lance Henderson, a resident of Utah, likely negotiated, signed, and performed the contract in Utah, Utah law may apply to Plaintiffs' breach of contract claim. However, this claim is just one claim of ten claims alleged in the Second Amended Complaint. And breach of contract is only alleged against one defendant, Lance Henderson. Relatively, the tort claims governed by Canadian law predominate the dispute. The Tenth Circuit has emphasized that "forum non conveniens is available, in favor of a foreign jurisdiction, even when the plaintiff sues under . . . U.S. law." *Lukoil*, 812 F.3d at 805 (holding that the district court did not err in dismissing the case for forum non conveniens where Russian law predominated the dispute, even though some of the plaintiff's claims fell under U.S. law). Thus, if Plaintiffs' contract claim is governed by Utah law, it does not change the court's choice of law conclusion.

The court finds that Canadian law applies to most of Plaintiffs' claims and thus controls the dispute. Because the two threshold questions have been met, the court proceeds to analyze the private and public interest factors.

## V. PRIVATE INTEREST FACTORS

In weighing the private interests, the district court must consider the following factors:

> (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive.

*Lukoil*, 812 F.3d at 806. After balancing the private interests, the court finds that the factors weigh in favor of Defendants' motion.

First, the relative ease of access to sources of proof weighs in favor of a Canadian forum. As previously mentioned, DIRTT Ltd., Falkbuilt Ltd., and Falkbuilt Inc. all established their headquarters and principal places of business in Canada. Although DIRTT Inc. established its principal place of business within the United States, it continues to share headquarters with its Canadian parent company. As Defendants note, more individuals named in the pleadings are Canadian citizens than U.S. citizens.

Plaintiffs argue that the court should account for the Falk Branches when determining ease of access to witnesses. But the court finds this argument unpersuasive. The Falk Branches, except for Falk Mountain LLC, are not party to the case. They are independent distributors not involved in the dispute. Because Falkbuilt Inc. and Falkbuilt Ltd. established their headquarters and principal place of business in Canada, and Smed, the instigator of the entire dispute, resides in Canada, a Canadian forum will have easier access than a U.S. forum to any sources of proof Plaintiffs seek to support their claims.

Second, the availability of compulsory process for compelling attendance of witnesses weighs in favor of Defendants' motion. 28 U.S.C. § 1782(a) provides a statutory process to compel

14

an American witness to appear or produce documents in Canada. Canada does not possess a comparable statutory process. *See* Logan Int'l v. 1556311 Alta. Ltd., 929 F.Supp.2d 625, 634 (S.D. Tex. 2012) ("Importantly, for purposes of trial in Canada, the district courts in the United States may compel testimony or production of documents from a resident of that district to be used in the litigation in Canada. There is no indication that Canada provides similar statutory assistance for litigants in the United States to compel testimony and documents from persons residing in Canada."). Plaintiffs argue that Defendants fail to identify which witnesses will need to be compelled to testify, but the factor does not require this analysis. The factor only requires the court to examine whether compulsory process is available.

The third factor weighs neither in favor nor against Defendants' motion. Certainly, "the cost of obtaining attendance of nonparty witnesses, including the many Canadian officers, directors, employees, and agents of Falkbuilt and DIRTT named in the parties' initial disclosures, will be much lower in Canada." Defs.' Mot. at 29. But Plaintiffs argue that securing witness attendance of the 95 Falk Branches may also prove much higher in Canada. Pls.' Opp. at 30. From the parties' briefings, however, it is unclear whether these witnesses will play any more than a minor role or how they factor into the ability of either party to prove or disprove their claims and defenses. Thus, Plaintiffs may be correct in asserting that "there will be expense involved with cost of attendance regardless of venue." *Id.* Therefore, the third factor remains neutral.

The fourth factor, possibility of view of the premises, weighs in favor of a Canadian forum. Falkbuilt's main showroom, factory, and headquarters are all located in Canada. Since Plaintiffs' claim largely involves replication of DIRTT's products, a visit to the place where Falkbuilt's products are researched, marketed, designed, and manufactured would be more probative of Plaintiffs' claims than a visit to the office of a non-party independent distributor.

Finally, all other practical problems that make trial of the case easy, expeditious and inexpensive support Defendants' motion. In the Canadian case, DIRTT has already filed a summary judgment application, for which a hearing is scheduled for September 22-26, 2025. ECF No. 282 ("Defs.' Repl.") at 8. Plaintiffs argue that this case will proceed to trial before the Canadian litigation. But this litigation is still at the motion to dismiss phase, and it is therefore highly unlikely that any summary judgment motions would be ripe before September of 2025. ECF No. 267-5 ("Bennett Jones LLP Opinion") at 3. Further, the possibility of consolidating the action before a Canadian forum would largely reduce costs associated with this litigation and prevent conflicting judgments. Thus, in balancing the private interests, the court finds the factors strongly support Defendants' motion.

## VI. PUBLIC INTEREST FACTORS

Next, the court balances the public interest factors:

> (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.

*Lukoil*, 812 F.3d at 808. The court also finds the public interest factors weigh in favor of Defendants' motion.

The first three factors weigh neither in favor nor against a Canadian or Utah forum. From evidence and arguments presented by the parties, it appears there is little difference between Canadian and Utah courts in terms of administrative backlog. Neither party has provided persuasive evidence to the contrary. The second and third factors are also neutral. This is not a localized dispute. Concerning both U.S. and Canadian corporations and residents, the litigation

spans almost all of North America. And both Utah and Canadian residents have a connection to the litigation as the companies operate in both locations.

Finally, the fourth factor weighs in favor of granting Defendants' motion. As previously discussed, the dispute is largely governed by Canadian law. Therefore, the court finds that the public interest factors also weigh in favor of a Canadian forum.

## CONCLUSION AND ORDER

For the reasons above, the court GRANTS Defendants' Motion to Dismiss for Forum Non Conveniens. The court finds that Canada is an adequate alternative forum, and that Canadian law predominates the dispute. Further, the court determines that the private and public interest factors weigh in favor of dismissal. Thus, the court dismisses this action WITHOUT PREJUDICE.

DATED February 5, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge