IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DIRTT ENVIRONMENTAL SOLUTIONS, INC., DIRTT ENVIRONMENTAL SOLUTIONS LIMITED,<br><br>        Plaintiffs,<br><br>v.<br><br>LANCE HENDERSON, KRISTY HENDERSON, FALKBUILT, INC., FALKBUILT LTD., MOGENS SMED, FALK MOUNTAIN STATES, LLC,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF FROM A FINAL ORDER AND JUDGMENT<br><br><br>Case No. 1:19-cv-00144-JNP<br><br>Chief District Judge Jill N. Parrish |

Plaintiffs DIRTT Environmental Solutions, Inc. ("DIRTT Inc.") and DIRTT Environmental Solutions Limited ("DIRTT Ltd.") (collectively, "Plaintiffs" or "DIRTT") filed this action in the District of Utah, asserting claims relating to state and federal trade secrets, consumer protection, deceptive practices, contract law, unjust enrichment, and tortious interference. ECF No. 2 ("Compl."); ECF No. 240-1 ("Second Am. Compl."). Defendants Lance Henderson, Kristy Henderson, Falkbuilt Inc., Falkbuilt Ltd., Mogens Smed, and Falk Mountain States, LLC (collectively, "Defendants") filed a motion to dismiss for forum non conveniens. ECF No. 255 ("Defs.' Mot."). After careful consideration, the court granted the motion and dismissed the action without prejudice. ECF No. 342 ("Order Granting Defs.' Mot."); ECF No. 343 ("J."). Now, before the court is Plaintiffs' motion for relief from a final order and judgment under FED. R. CIV. P. 60(b). ECF No. 344 ("Pls.' Mot.").

For reasons set forth below, Plaintiffs' motion for relief is DENIED. The court's earlier order and judgment remain in effect.

## BACKGROUND

DIRTT Ltd. is a Canadian company incorporated and headquartered in Canada. Order Granting Defs.' Mot. at 2. It owns the trade secret information relevant to this case and licenses it to its wholly owned subsidiary, DIRTT Inc. *Id.* The subsidiary is incorporated in Colorado, headquartered in Canada, and has its principal place of business in Georgia. *Id.* The present dispute largely revolves around Mogens Smed, a resident of Canada who co-founded DIRTT in 2004. *Id.* He served as CEO of both companies until 2018. *Id.* Following his removal, Smed established a Canadian company Falkbuilt Ltd. with a Delaware subsidiary Falkbuilt Inc. (collectively "Falkbuilt"). *Id.* Both companies have their headquarters and principal places of business in Canada. *Id.*

Litigation began when Plaintiffs filed claims against Falkbuilt Ltd., Smed, and a former DIRTT employee Barrie Loberg in Canada. *Id.* Seven months later, Plaintiffs began this action against Defendants. *Id.* This action involved claims against Falkbuilt Ltd., Faulkbuilt Inc., and Smed (collectively the "Falkbuilt Defendants"). *Id.* Plaintiffs also assert claims against a former DIRTT employee Lance Henderson, his wife Kristy Henderson, and Falkbuilt's Utah affiliate Falk Mountain States, LLC (collectively the "Henderson Defendants"). *Id.* The claims in the operative complaint centered on Smed, who allegedly worked with current and former DIRTT employees to "replicate the business of DIRTT, Inc. and DIRTT Ltd., steal DIRTT, Inc.'s partners and end-user customers, and co-opt DIRTT, Inc.'s product characteristics and business reputation as Falkbuilt's own, through improper means." Second Am. Compl. ¶ 35.

2

At first, only the Falkbuilt Defendants moved to dismiss for forum non conveniens. ECF No. 134 ("Falkbuilt Defs.' Mot. to Dismiss"). Judge David Barlow granted the motion but allowed the case to proceed against Henderson Defendants. ECF No. 164 ("Order Granting Falkbuilt Defs.' Mot."). The Tenth Circuit reversed, holding that the court had abused its discretion by "dismiss[ing] an action as to several defendants under a theory of *forum non conveniens* while simultaneously allowing the same action to proceed against other defendants." *DIRTT Env't Sols., Inc. v. Falkbuilt Ltd.*, 65 F.4th 547, 549 (10th Cir. 2023).

After the case was reassigned, Defendants—now including the Henderson Defendants— brought a new motion to dismiss the complaint for forum non conveniens. Defs.' Mot. By this point, the Henderson Defendants had consented to the jurisdiction of the Canadian court overseeing the Canadian action *Id.* at 19. Defendants emphasized that this "dispute has been and continues to be undeniably Canadian." *Id.* at 1. They urged this court to allow the "related claims . . . be heard in one, consolidated proceeding [in Canada], instead of two substantially overlapping, parallel proceedings." *Id.* Plaintiffs opposed the motion on several grounds. *See* ECF No. 267 ("Pls.' Opp'n to Defs.' Mot.). They first argued that the motion was inconsistent with the Tenth Circuit's order and was untimely. *Id.* at 7–13. They also argued that the motion failed under the forum non conveniens standard, both with respect to the threshold inquiry and with respect to the balancing of private and public interest factors. *Id.* at 16–34. *See Unitednet Ltd. v. Tata Commc'ns Am., Inc.*, 112 F.4th 1259, 1265–66 (10th Cir. 2024) (describing the relevant legal framework).

The court, after extensive briefing and deliberation, granted Plaintiff's motion to dismiss. *See* Order Granting Defs.' Mot. It first found that the Tenth Circuit's instructions did not require denying Plaintiffs' motion and that the motion was timely. *Id.* at 5–7. Turning to the threshold inquiry, the court disagreed with Plaintiffs and found (1) that Canada was an adequate alternative

forum and (2) Canadian law predominated the dispute. *Id.* at 7–13. It next analyzed the private and public interest factors, concluding they ultimately favored Defendants' motion. *Id.* at 14–17. Accordingly, the Court granted Defendants' motion to dismiss and entered a judgment dismissing Plaintiffs' action without prejudice. *Id.* at 17; J.

Plaintiffs, however, exercised their rights under FED. R. CIV. P. 60(b) and brought a timely motion for relief from the court's final order dismissing the case.[1] Pls.' Mot. Plaintiffs appear to primarily rely on Rule 60(b)'s catch-all provision that allows a court to provide redress for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6); Pls.' Mot. at 3–4. They assert that their motion should be granted because "the [c]ourt relied on unsupported or contradicted assumptions, resulting in manifestly erroneous findings." *Id.* at 4. In doing so, they develop five specific arguments for relief: (1) "no summary judgment motion is pending in the Canadian [a]ction"; (2) "the record demonstrates that U.S. discovery . . . is nearly the only discovery at issue"; (3) "the statute of limitations on DIRTT's claims have [made] it impossible to file a new action in Canada"; (4) [t]he Canadian [a]ction . . . has progressed too far for DIRTT to now join its claims"; and (5) "[t]he [c]ourt has no discretion to send DIRTT's claims against Henderson Defendants to Canada on [forum non conveniens] grounds [because] U.S. law applies." *Id.* at 4, 7–8, 10 (emphasis omitted). Defendants oppose these arguments. *See* ECF No. 347 ("Henderson Defs.' Mem. in Opp'n"); ECF No. 348 ("Falkbuilt Defs.' Mem. in Opp'n"). Plaintiffs continue to stand by their motion on all five grounds. ECF No. 351 ("Pls.' Reply").

The court analyzes these five arguments in turn, ultimately concluding that they fail to justify Rule 60(b) relief, whether considered individually or collectively.

---

[1] The court construes Plaintiffs' motion as also asking for relief from the court's judgment.

**LEGAL STANDARD**

Rule 60(b) enables a court to order relief from a final order or judgment for various enumerated reasons. *See* FED. R. CIV. P. 60(b)(1)–(5). This includes Rule 60(b)(1), which allows a court to order relief based on "mistake." FED. R. CIV. P. 60(b)(1). Under this rule, the court can grant relief if "the judge has made a substantive mistake of law or fact in the final judgment or order." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999). Additionally, under Rule 60(b)(6) a court can set aside a final order or judgment for "for any other reason that justifies relief." FED. R. CIV. P. 60(b)(6); *Yapp*, 186 F.3d at 1231–32.

At the same time, the court must "keep[] in mind that Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances." *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) (quoting *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 754 (10th Cir. 2011)). Thus, "Rule 60(b) relief is not properly granted where a party merely revisits the original issues and seeks to challenge the legal correctness of the district court's judgment by arguing that the district court misapplied the law or misunderstood the party's position." *Id.* at 1306 (citation modified). Similarly, "[d]istrict courts may grant a Rule 60(b)(6) motion only in extraordinary circumstances and only when such action is necessary to accomplish justice." *In re Gledhill*, 76 F.3d 1070, 1080 (10th Cir. 1996) (quoting *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 729 (10th Cir.1993)).

**ANALYSIS**

**I.    Summary Judgment in the Canadian Action**

Plaintiffs' first argument for relief turns on the fact that there is currently "no summary judgement motion . . . pending in the Canadian [a]ction." Pls.' Mot. at 4. In a paragraph-long argument, Plaintiffs note that the court's previous statement about a pending Canadian summary

judgment motion is no longer accurate. *Id.* But Plaintiffs do not explain why this development constitutes an exceptional circumstance that justifies Rule 60(b) relief. *Id.* Nor can they.

The court's comment regarding the then pending summary motion judgment motion was made in passing and was far from central to the court's reasoning. The court referenced the pending Canadian summary judgment motion while analyzing the "other practical problems that make trial of the case easy, expeditious, and inexpensive." Order Granting Defs.' Mot. at 16. As part of emphasizing that the Canadian action was further along than the U.S. action, the court noted that "DIRTT ha[d] already filed a summary judgment application" in the Canadian action. *Id.* But the progress of the Canadian action relative to the U.S. action is not radically transformed simply because Plaintiffs withdrew their summary judgment motion. Indeed, in their present motion, Plaintiffs emphasize the Canadian action's rapidly approaching trial date, which further confirms the court's earlier finding that the Canadian action is likely to reach a resolution on the merits much sooner than any U.S. action.[2] Pls.' Mot. at 8.

It is doubtful whether this development regarding Plaintiffs' summary judgment motion even supports their position, and it certainly does not justify intervention under Rule 60(b).

## II.   U.S. Discovery

Plaintiffs' second argument alleges that the court improperly minimized the role of U.S. discovery. *Id.* at 4–6. According to Plaintiffs, "the [c]ourt chose to speculate—incorrectly—about the potential scope of discovery instead of relying on the record." *Id.* at 4. But the court's consideration of discovery issues occurred in the context of applying the appropriate forum non

---

[2] In their briefing, Plaintiffs emphasized that the Canadian action was scheduled to go to trial in February 2026. The court has received no additional information regarding the Canadian action.

conveniens framework, which requires the court to anticipate "the relative advantages and obstacles to fair trial." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). And Plaintiffs fail to identify any aspects of the record that the court failed to consider. Thus, this argument is unpersuasive.

Plaintiffs' main allegation is that the court improperly "opine[d] on the merits of witnesses" when it noted the uncertain role of U.S. witnesses from the Falk branches. Pls.' Mot. at 5. This occurred when the court gave little weight to the cost of securing these witnesses because it "[was] unclear whether these witnesses w[ould] play any more than a minor role" or "how they [would] factor in the ability of either party to prove or disprove their claims and defenses." Order Granting Defs.' Mot. at 15. Plaintiffs now suggest that the court should have simply deferred to the fact that Plaintiffs had issued subpoenas to various U.S. Falk branches and related witnesses. Pls.' Mot. at 5. But what Plaintiffs now characterize as improper speculation is a natural consequence of the relevant legal inquiry, which involves looking ahead to anticipate what witnesses will be needed at trial. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 (1981) ("The central purpose of any *forum non conveniens* inquiry is to ensure that *the trial* is convenient.") (emphasis added). Indeed, this anticipatory analysis is precisely what Plaintiffs had asked the court to do with respect to Defendants' identified witnesses.[3] Regardless, Plaintiffs point to no contrary legal authority establishing that it was improper for the court to consider whether these witnesses would be

---

[3] In discussing the cost of securing the attendance of non-party witnesses, Plaintiffs argued that "Defendants' reliance on initial disclosure is somewhat misplaced as a person identified as having knowledge does not necessarily equate to a witness at trial." Pls.' Opp'n to Defs.' Mot. at 37. Yet, by the very same logic, Plaintiffs' proposed reliance on deposition subpoenas would be similarly misplaced because a person who receives a subpoena is not necessarily a witness who will be called at trial.

important to the parties' cases or otherwise necessary for trial.[4] And Plaintiffs point to nothing in the record establishing that the court's skepticism regarding the importance of these witnesses was unfounded.

Relatedly, Plaintiffs argue that the court erred in considering the costs of obtaining the attendance of "Canadian third-party witnesses" when "there are none." Pls.' Mot. at 6 (emphasis omitted). But Plaintiffs failed to make this argument in their original briefing and instead appeared to concede that there could be some third-party Canadian witnesses at trial. *See* Pls.' Opp'n to Defs.' Mot. at 28–30. Regardless, Plaintiffs point to nothing in the record that definitively establishes that there would be no Canadian third-party witnesses at trial. Plaintiffs emphasize that "[n]o served discovery involved third parties in Canada." Pls.' Mot. at 6. Yet Plaintiffs give no explanation why the universe of witnesses at trial would have been limited by the scope of served discovery at the time of Defendants' motion, even if "written discovery [was] complete."[5] *Id.* at 5–6.

Finally, Plaintiffs allege that the court improperly found that the possibility to view the premises favored a Canadian forum when Plaintiffs had "expressly disclaimed the need for such a visit" in Canada. *Id.* at 6. But Plaintiffs obviously cannot disclaim discovery needs on behalf of

---

[4] The court doubts that such authority exists because if a plaintiff could tilt the forum non conveniens analysis simply through seeking out witnesses of minor evidentiary value, then the purpose of the doctrine—which exists to ensure "that the plaintiff may not, by choice of an inconvenient forum, vex, harass, or oppress the defendant"—could all too easily be circumvented. *Gulf Oil Corp.*, 330 U.S. at 508 (citation modified).

[5] Given this possibility of Canadian third-party witnesses at trial, Plaintiffs' argument that the court should have just ignored Canada's compulsory process for witnesses, or lack thereof, rings hollow. *See* Pls.' Mot. at 6.

Defendants. And Plaintiffs do not establish that Defendants would have had no need for visits to a Canadian premise.

Thus, at bottom, Plaintiffs' argument is little more than an assertion "that the . . . court misapplied the law" by giving insufficient weight to the importance of U.S. discovery. *Lebahn*, 813 F.3d at 1306. While Plaintiffs may have the right to make this argument on appeal, it does not suffice for Rule 60(b) relief.[6]

## III.    Independent Canadian Action

Next, Plaintiffs argue for relief on the grounds that they cannot now file their claims in an independent Canadian action. In making this argument, Plaintiffs emphasize the following footnote in the court's order:

> The parties argued extensively about whether the claims before this court may be consolidated in the pending Canadian action. But whether the claims here could be added to the pending Canadian litigation is irrelevant to the adequate alternative forum analysis. Even if the claims could not be added, Canada would still be an adequate alternative forum for *an independent suit*.

Order Granting Defs.' Mot. at 9 n.1 (emphasis added). Plaintiffs argue that this assumption regarding the availability of an independent Canadian suit is false because "the statute of limitations on [Plaintiffs'] claims [has] run, making it impossible to file a new action in Canada." Pls.' Mot. at 7.

---

[6] Additionally, all the supposed mistakes that Plaintiffs identify appear to be harmless. They all occurred in the context of the court's analysis of the private interest factors. Order Granting Pls.' Mot. at 14–15. Even if Plaintiffs' assertions were all accepted, the court still likely would have found that the private interest factors favored Canada based on the relative ease of access to proof and other practical considerations. *See id.* at 14–16. And if the court were somehow persuaded that these private interest factors were in equipoise, it would have reached the same conclusion based on the public interest factors. *Id.* at 16–17

But even if the court's statement about the possibility of a new Canadian action were false, any supposed inaccuracy is irrelevant to the arguments raised by Plaintiffs when opposing the motion to dismiss. The statement occurred in the context of analyzing whether Canada was an adequate forum. But Plaintiffs' arguments focused exclusively on two topics: (1) the adequacy of the injunctive relief available from Canadian courts and (2) problems that could arise from the Canadian court's deference to U.S. courts on U.S. causes of action. Pls.' Opp'n to Defs.' Mot. at 17–20. The court responded in detail to these arguments, with nothing turning on whether Canadian courts could hear Plaintiffs' claims in an independent action. *See* Order Granting Defs.' Mot. at 7–9. Thus, even if applicable statutes of limitation bar Plaintiffs from bringing their claims in a new Canadian action, this does nothing to resuscitate Plaintiffs' arguments for why Canada was an inadequate forum.

Of course, the asserted impossibility may be relevant to arguments that Plaintiffs should have raised previously—such as the argument that Canada was an inadequate forum because it could not hear all their claims. But the Tenth Circuit has held that "a party may not use Rule 60(b) to raise arguments that could have been raised earlier." *Lebahn*, 813 F.3d at 1308. Plaintiffs identify nothing that prevented them from raising this argument in their original briefing. And as Plaintiffs emphasize in their briefing on the pending motion, this "court[] cannot concoct or resurrect arguments neither made nor advanced by parties." Pls.' Mot. at 7 (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998)). Accordingly, the court will not use Rule 60(b) to consider an argument Plaintiffs chose not to advance. Thus, even if it now is impossible for Plaintiffs to bring their claims in independent action, this fact would not merit Rule 60(b) relief.

IV.     **Joining Claims in Canada**

Plaintiffs similarly argue that they are entitled to Rule 60(b) relief because "[t]he Canadian [a]ction . . . has progressed too far for DIRTT to now join its [additional] claims." Pls.' Mot. at 8. The court, though, is unpersuaded by this argument for several reasons.

First, Plaintiffs' evidence for this claim is much too speculative to warrant intervention under Rule 60(b). This argument assumes that the Canadian trial date was set in stone. *See id.* at 8–10 (emphasizing that the additional discovery would not be capable of being accomplished before the scheduled trial date). But Plaintiffs give no direct evidence that the trial date was incapable of being changed at the time the court ruled on the motion to dismiss. Indeed, Plaintiffs appear to concede that the trial date could have been pushed back with the permission of the Canadian court. *See* Pls.' Reply at 5 n.3.

Second, even if now it is impossible for Plaintiffs to join their claims, this is a result of Plaintiffs' own conduct. The Falkbuilt Defendants allege that they reached out to Plaintiffs to "facilitate adding the Henderson [D]efendants" to the Canadian action in February 2025 and received no reply. Falkbuilt Defs.' Mem. in Opp'n at 9; ECF No. 348-1 ("Falbuilt Defs.' Ex. A"). Plaintiffs give no response for why they failed to respond or take any other action actions to join their remaining claims to the Canadian action after this court's final order and judgment. Of course, Plaintiffs were, and are, under no obligation to add additional claims to the Canadian action. But when Plaintiffs ask the court to exercise its "grand reservoir of equitable power to do justice in a particular case," their request is undermined when the present impossibility is the predictable result of their own choices. Pls.' Mot. at 3–4 (quoting *Thompson v. Kerr-McGee Ref. Corp.*, 660 F.2d 1380, 1385 (10th Cir. 1981)). *See also Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1293 (10th Cir. 2005) ("Parties cannot use Rule 60(b) as mechanism to correct their own mistakes.").

Third, it is unclear whether this development, even if true, would change the court's conclusion. In its analysis, the court noted that "consolidating the action before a Canadian forum would largely reduce costs associated with [the] litigation and prevent conflicting judgments." Order Granting Defs.' Mot. at 16. While these benefits from consolidation may be reduced if Plaintiffs are unable to join all their claims to the Canadian action, the other benefits would still be substantial. Plaintiffs have not shown that the overall balance of the private and public interest factors would shift simply based on their inability to resolve all their claims in Canada.[7]

Given these considerations, this argument does not warrant reconsideration under Rule 60(b).

## V.    U.S. Law Governing the Claims Against the Henderson Defendants

Finally, Plaintiffs assert that the claims against the Henderson Defendants cannot be dismissed on forum non conveniens grounds if they are governed by U.S. law. Pls.' Mot. at 10–11. In doing so, they emphasize *Rivendell Forest Prods., Ltd. v. Canadian Pacific. Ltd.*, which states that "[i]f domestic law applies, . . . then *forum non conveniens* doctrine is inapplicable." 2 F.3d 990, 993 n.4 (10th Cir. 1993).

But in *Archangel Diamond Corporation Liquidating Trust v. Lukoil*, the Tenth Circuit clarified that *Rivendell* does not prevent a court from dismissing a case on forum non conveniens grounds when it contains a mix of foreign and U.S. claims:

---

[7] Plaintiffs may have used their inability to join their claims as a separate argument for why Canada was an inadequate alternative forum—namely, because it was incapable of hearing all their claims. But, as discussed above, such an argument was never advanced by Plaintiffs despite the opportunity to do so. *See* Pls.' Opp'n to Defs.' Mot. at 32 (where Plaintiffs expressed skepticism regarding whether it was possible to join their additional claims to the pending Canadian action in the context of a different argument). Thus, it is improper for Plaintiffs to pursue this argument as a basis for Rule 60(b) relief.

> We did not intend this language in *Rivendell* to foreclose forum non conveniens dismissal whenever the plaintiff includes a domestic claim. In *Rivendell,* all of the claims were governed by foreign law. Thus, we had no occasion in *Rivendell* to consider the availability of forum non conveniens when some of the claims are governed by foreign law and some are governed by U.S. law. But . . . we have not applied *Rivendell* to foreclose consideration of forum non conveniens when some of the claims are based on U.S. law and some are based on foreign law. To do otherwise would allow a party to avoid a forum non conveniens dismissal simply by including a claim based upon a domestic statute. Here, the vast majority of the underlying dispute is subject to [foreign] law, and forum non conveniens applies.

812 F.3d 799, 805–06 (10th Cir. 2016). When considering Defendants' motion, the court engaged in an extensive choice-of-law analysis and similarly found that "the vast majority of the underlying dispute is subject to [foreign] law." *Id.* at 806; Order Granting Defs.' Mot. at 9–13. Insofar as Plaintiffs invoke *Rivendell* to argue that a higher standard applies where foreign law must govern *all* the claims in the dispute, the Tenth Circuit has unambiguously rejected their argument. Plaintiffs try to distinguish *Lukoil* on the grounds that the contract law claim in *Lukoil* was governed by foreign law, while a contract law claim here is plausibly governed by U.S. law. Pls.' Mot. at 10–11. But nothing in *Lukoil* suggests this difference should matter. Indeed, the *Lukoil*'s court's concern that parties could avoid "a forum non conveniens dismissal simply by including a claim based upon a domestic statute" reflects a more general worry regarding gamesmanship that applies just as naturally to the strategic use of domestic contracts. *Lukoil*, 812 F.3d at 806.

Regardless of whether this legal interpretation is ultimately correct, Plaintiffs have not demonstrated that it "ignore[s] controlling Tenth Circuit precedent" or is otherwise "manifestly erroneous" in the way required to justify Rule 60(b) relief. Pls.' Mot. at 10–11.

13

## CONCLUSION AND ORDER

For the reasons above, the court DENIES Plaintiffs' motion for relief under FED. R. CIV. P. 60(b). The court's prior orders and judgment remain in effect.

DATED March 19, 2026

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge